189 N.J. Super. 178 (1982)
459 A.2d 697
FRANKLIN D. WERT, JR., AND RUTH WERT, HIS WIFE, PLAINTIFFS,
v.
EUGENE C. PICCIANO AND UNITED SERVICES AUTOMOBILE ASSOCIATION INSURANCE CO., DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
November 19, 1982.
*179 Michael J. Larkin for plaintiffs.
Connell, Foley & Geiser, attorneys for defendant United Services Automobile Association Insurance Co. (Samuel D. Lord, of counsel and on the brief).
CASS, PETER J., J.S.C. (temporarily assigned).
In this declaratory judgment action plaintiffs seek a determination as to the applicability and effect of an underinsured motorist's endorsement in an automobile insurance policy issued by defendant insurance company. An arbitration proceeding has been stayed pending resolution of this dispute, which is now before the court on plaintiffs' motion for summary judgment.
The facts admitted for purposes of this action are that plaintiff Franklin D. Wert, Jr. was operating an employer-leased vehicle northbound on Grove Street, Montclair, on August 22, 1977, when he was struck by a vehicle negligently operated southbound on the same street by codefendant Eugene C. Picciano. Picciano's insurance carrier, Safeco Insurance Co., which insured him for bodily injury of $15,000 per person, per occurrence, has deposited the full limits of his coverage in court for payment to Wert.
Wert also maintained an automobile insurance policy issued by defendant United Services Automobile Association Insurance *180 Co. (U.S.A.A.). This policy covered Wert while driving a nonowned vehicle and provided liability coverage of $100,000 each person, per occurrence, to others injured by the insured's negligence. It further provided standard uninsured motorists (UM) coverage required by N.J.S.A. 17:28-1.1 if involved in an accident with a negligent uninsured motorist, in the amount of $25,000 per person. Moreover, the policy provided a new form of coverage under an endorsement called the underinsured motorists (UIM) coverage, which afforded to the insured coverage up to his UM limits of $25,000 per person for those situations where another tortfeasor carried a lesser liability coverage.
Plaintiffs contend that because of the UIM endorsement U.S.A.A. is liable to them for the full $25,000 of this coverage in addition to the $15,000 deposited in court by Safeco, a total of $40,000, provided only they show their entitlement in an arbitration proceeding to damages at least equal to that combined amount. U.S.A.A. argues that its liability under the endorsement is limited to the face amount of $25,000 less the $15,000 paid into court by Safeco, or $10,000. Solely for the purposes of the declaratory judgment action, U.S.A.A. concedes that Wert's claims exceed the sum of $40,000.
The coverage afforded is provided in two endorsements to the main policy. The first endorsement, designated "PROTECTION AGAINST UNINSURED MOTORISTS INSURANCE  NEW JERSEY," provides in paragraph I as follows:
The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury .. . caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle...
"uninsured highway vehicle" means:
(a) a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured highway vehicle is principally garaged, no bodily injury and property damage liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury and property damage liability bond or insurance policy applicable at the *181 time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent; or ...
Under Section III, "Limits of Liability," the coverage is restricted under paragraph (c) as follows:
Any amount payable under the terms of this insurance because of bodily injury or property damage sustained in an accident by a person who is insured shall be reduced by
(1) all sums paid on account of such bodily injury or property damage by or on behalf of
(i) the owner or operator of the uninsured highway vehicle and
(ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury or property damage,
including all sums paid under the bodily injury or property damage liability coverage of the policy....
The second endorsement, designated "SUPPLEMENTARY UNINSURED MOTORISTS INSURANCE (Bodily Injury  Property Damage  Limits  Underinsured Motorists)," adds the UIM coverage to the policy and provides as applicable:
It is agreed that, with respect to such insurance as is afforded by the policy for damages because of bodily injury ... caused by accident and arising out of the ownership, maintenance or use of an uninsured highway vehicle, or an uninsured motor vehicle, subdivision (a) ... of the definition of "uninsured highway vehicle" or "uninsured motor vehicle" is amended to include "underinsured highway vehicle", subject to the following provisions:
1. If limits of liability for such insurance are stated in the schedule of this endorsement; (a) the limits so stated as applicable to `Bodily Injury' shall apply in lieu of any limits therefor stated elsewhere in the policy and, subject to all the terms of the policy having reference thereto, shall be the total limit of the company's liability for all damages because of bodily injury as the result of any one accident arising out of the ownership, maintenance or use of uninsured highway vehicles or uninsured motor vehicles; ...
2. When used in reference to this insurance (including this and other endorsements forming a part of the policy) `underinsured highway vehicle' means a highway vehicle with respect to the ownership, maintenance or use of which, as respects damages because of bodily injury or property damage or both, the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies respectively applicable to bodily injury or property damage at the time of the accident is less than the applicable limits of liability under this insurance; ...
3. The company shall not be obliged to make any payment because of bodily injury or property damage to which this insurance applies and which arises out of the ownership, maintenance or use of an underinsured highway vehicle until after the limits of liability under all bodily injury and property damage liability bonds or insurance policies respectively applicable at the time of the *182 accident to damage because of bodily injury or because of property damage have been exhausted by payment or judgments or settlements.
Mandated by statute in some states[1], UIM coverage is a relatively new insurance offered as optional coverage in other states. The underinsured endorsement provides the insured with coverage not to exceed the maximum he selects for his UM coverage. The UM coverage is afforded under the policy in the event the insured has an accident with a vehicle which carries no liability insurance. The UIM coverage is provided in the event the insured has an accident with a culpable tortfeasor who has less coverage under his liability policy than the insured. The question here is whether in the event of such an accident the amount of UIM coverage ($25,000) and the sum set aside by Safeco ($15,000) are cumulative or whether the UIM endorsement is meant to guarantee a minimum to its insured and thus amounts received under other policies are to be deducted.
While interpretation of the UIM clause is a matter of first impression in New Jersey, other states have construed similar clauses. Review of the out-of-state cases supports the position of defendant U.S.A.A. in the present action. In the leading case of Lick v. Dairyland Ins. Co., 258 N.W.2d 791 (Minn. 1977), the Supreme Court of Minnesota, construing its mandatory UIM statute, held that where a tortfeasor carried liability insurance in an amount equal to that of the UIM coverage carried by plaintiff's decedents, the tortfeasor was not "underinsured" and the UIM coverage carrier for plaintiff's decedents was entitled to offset the UIM coverage by the amount paid by the tortfeasor's liability insurer. While its statute (Minn. Stat. 1971, § 65B.26(d)) provided for such deduction, the court's discussion of the rationale for the statute is instructive. It stated:

*183 Contrary to plaintiff's argument, the statute does not provide that a motorist is `underinsured' relative only to the judgment recovered against him. Rather, a motorist is underinsured relative to the limits of underinsured coverage for which the recovering party has contracted ... (at 793).
... Under the Minnesota statute or case law from other jurisdictions, the amount paid under the insurance policy of the tortfeasor is properly deducted from the underinsured motorist coverage; it is only to the extent that the underinsured motorist coverage exceeds the tortfeasor's insurance that the tortfeasor is underinsured. [at 794]
Of similar import is the language of the Florida Supreme Court, which was called upon to interpret its underinsured motorist statute in Dewberry v. Auto-Owners Ins. Co., 363 So.2d 1077 (1978). Agreeing with the defendant/appellee's contention that the basic theory behind uninsured motorist coverage is compensation to a plaintiff for a deficiency in a tortfeasor's personal liability insurance coverage, the court went on to say:
It could not have been intended to place the insured who is injured by an underinsured motorist in a better position than one who is harmed by a motorist having the same insurance as the insured... Thus, we find that the $15,000 liability coverage of the tortfeasor which was tendered to the insured reduced what the appellant could receive from his uninsured motorist carrier by that amount. [at 1081]
In Rutherford v. Tennessee Farmers Mut. Ins. Co., 608 S.W.2d 843 (Tenn.Sup.Ct. 1980), plaintiff was injured by a tortfeasor insured by Allstate for the minimum prescribed by the state financial responsibility law. Plaintiff's own coverage under an UIM provision was $50,000. The court held that the trial court had properly ruled that plaintiff's recovery under her own policy was the difference between the full limits of the UIM coverage and the amount paid by Allstate on account of its insured.
Plaintiffs here urge that the court construe the UIM endorsement in the same manner as the UM endorsement. This latter endorsement has been construed to give effect to a legislative mandate compelling UM coverage without any offset for payments made under liability coverage. Ciecka v. Transamerica Ins. Group, 81 N.J. 421 (1979); cf. Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277 (1974); Mozee v. McGhee, 171 N.J. Super. 454 (App.Div. 1979). In Ciecka our Supreme Court interpreted a "Limits of Liability" clause identical to one contained *184 in the policy at issue in this case. It found the clause to be plainly invalid because it disserved the purpose of the UM endorsement expressed in N.J.S.A. 17:28-1.1. Referring to its decision in Phillips, supra, the court in Ciecka stated:
... We likewise reaffirmed our commitment to a policy of liberally construing legislation involving automobile insurance to effect `the broadest protection of auto accident victims consistent with the language of the pertinent statute ... we here determine that the statute compels both Transamerica and Home to make available their UM coverage without any offset for payments heretofore made under Transamerica's liability coverage. [81 N.J. at 428]
No such restriction in New Jersey applies, however, to the UIM coverage, as this is not statutorily required. Thus, there is no bar to enforcing the "Limits of Liability" section which restricts the recovery of plaintiffs under UIM coverage. Therefore in this case the court holds that plaintiffs' recovery shall be limited to the difference between the face amount of the UIM endorsement of $25,000 and the $15,000 payment made by Safeco on behalf of the insured tortfeasor, or $10,000.
This decision is the logical extension of the rationale expressed by our Supreme Court in Gorton v. Reliance Ins. Co., 77 N.J. 563 (1978). There it refused to permit insureds to recover under their own UM endorsements in a situation where the tortfeasor whose negligence was responsible for their injuries had insufficient bodily injury liability coverage. Declining to follow a line of cases of which Porter v. Empire Fire and Marine Ins. Co., 106 Ariz. 274, 475 P.2d 258 (Ariz. 1970) mod. on other grounds, 106 Ariz. 345, 476 P.2d 155 (Ariz. 1970) is the leading exponent, the Supreme Court found the objective of the legislation in UM coverage was to protect the public from a noninsured, financially irresponsible motorist, not one who is insufficiently insured.
UIM coverage fills the vaccum here and guarantees to an insured motorist a minimum coverage up to the amount he chooses against the person who is insufficiently insured. Not to setoff the amount of the latter's coverage is neither logically *185 consistent nor in accord with the Limits of Liability clause which applies here.
Plaintiffs' motion for summary judgment is therefore denied.
NOTES
[1] These states are Florida  Fla. Stat. Ann. § 627.727 (1977); Georgia  Ga. Code Ann. § 56.407 (1977); Louisiana  La. Rev. Stat. Ann. § 22.1406(D) (1977); Maine  Me.Rev.Stat., Tit. 24-A, § 2902 (1976-1977); Minnesota  Minn. Stat. § 65B.26(d) (1971); Tennessee  Tenn. Code Ann. § 56-1148 (Cum. Sup. 1976); Virginia  Va.Code, § 38.1-381 (1976).