**TRANSAMERICA INSURANCE GROUP, Plaintiff,**

v.

**Charles L. OSBORN and Mountain West Farm Bureau Insurance Company, Inc., Defendants.**

**No. CV 83–204–M–CCL.**

United States District Court, D. Montana, Missoula Division.

Feb. 6, 1986.

Paul C. Miesmer, Garlington, Lohn & Robinson, Missoula, Mont., for plaintiff.

Gene I. Brown, Landoe, Brown, Planalp, Kommers & Lineberger, Bozeman, Mont., Shelton C. Williams, Williams Law Firm, Missoula, Mont., for defendant Mountain West Farm Bureau Ins Co.

Sam E. Haddon, Boone, Karlberg & Haddon, Missoula, Mont., for defendant Osborn.

## OPINION AND ORDER

LOVELL, District Judge.

Plaintiff filed this declaratory judgment action seeking a determination of the extent of liability to its insured, defendant Charles L. Osborn, under the "underinsured motorists coverage" provisions of the insured's policy. Both plaintiff and defendant Osborn have moved for summary judgment, and the issue has been submitted on briefs. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

Plaintiff (hereinafter "Transamerica") issued a policy of automobile insurance to defendant Charles Osborn (hereinafter "Osborn"), under the terms of which Transamerica agreed to provide coverage for damages occasioned by an accident with an underinsured motor vehicle. This policy was in effect on March 22, 1980. On that date, while Osborn was on duty as a police officer for the City of Dillon, Montana, he was struck by an automobile owned by Ralph Huntley & Sons, Inc., and operated by one Gerald McArthur. It is undisputed that Osborn sustained severe injuries as a result of the accident.

On October 5, 1983, Osborn recovered a judgment in state district court against Gerald McArthur in the amount of $187,-333.19. In partial satisfaction of said judgment, Farmers Insurance Exchange paid to Osborn the sum of $25,000.00, representing the limits of liability coverage under Gerald McArthur's policy with Farmers.

Defendant Mountain West Farm Bureau Insurance Company, Inc., (hereinafter "Mountain West"), which carried a policy of insurance for the Huntley vehicle, filed a declaratory judgment action in state court, resulting in a jury determination that Mountain West's coverage extended to Gerald McArthur for the accident in question. This determination was upheld on appeal to the Supreme Court of Montana. *Mountain West Farm Bureau Mut. Ins. Co. v. Farmers Ins. Exch. Co.*, —— Mont. ——, 680 P.2d 330 (1984). As a result, a maximum of $101,000 of coverage was made available to Osborn under the Mountain West policy. All claims between Osborn and Mountain West now have been fully settled.

Because Osborn was acting within the scope of his employment at the time of the accident, he received approximately $17,-885.85 in workers' compensation benefits from the Workers' Compensation State Fund for the State of Montana.

The issue presented for summary judgment is whether, in light of the above monies paid or made available to Osborn, the Huntley vehicle comes within the policy definition of "underinsured motor vehicle" so as to render Transamerica liable to Osborn for the $50,000.00 limits of liability under the policy.

The policy language around which the dispute revolves is the definition of "underinsured motor vehicle," which is defined as

a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury

liability is less than the limit of liability for this coverage.

Transamerica's position is that the underinsured motorist coverage is intended to provide an absolute minimum amount of recovery for the insured, so that the insured would be guaranteed $50,000.00 coverage where the "underinsured" vehicle carried less than that amount. Under this construction of the policy, the underinsured motorist provision is applicable *only* where the vehicle involved carries the minimum amount of insurance required by the state's financial responsibility laws, but does not carry insurance with limits in excess of $50,000.00. The policy specifically excludes from the definition of "underinsured motor vehicle" any vehicle which carries an insurance policy with limits of liability *less* than the minimum limit required by the state financial responsibility law. In this case, Transamerica argues that since Osborn has received upwards of $125,000 from the insurers of the automobile and the driver, the Huntley vehicle is not "underinsured" within the meaning of the policy, and therefore the underinsured motorist provisions are not applicable.

Osborn, on the other hand, contends that the $50,000.00 coverage should be available without offset of either the workers' compensation benefits received by Osborn or the insurance coverage from other sources. This construction of the policy, Osborn maintains, is consistent with Montana law and public policy, the purpose of which is to compensate the injured party for his loss without resulting in duplication of payment. Osborn claims that payment of the $50,000.00 is justified under the terms of the policy because the Huntley vehicle was underinsured in relation to the judgment recovered by Osborn, and that even if Transamerica pays the full extent of the coverage he will not be compensated for his entire loss.

▆▆▆ This case presents an issue of first impression in the interpretation of insurance law and policy provisions in Montana. Where jurisdiction is based on diversity of citizenship, the court is bound to follow the substantive law of the forum state. *St. Paul Fire and Marine Ins. Co. v. Weiner*, 606 F.2d 864 (9th Cir.1979). When a federal court confronts a situation not yet met by the forum state's highest court, it must seek the rule it believes that state court would adhere to were it confronted with a similar situation. *Commercial Union Ins. Co. v. Ford Motor Co.*, 640 F.2d 210 (9th Cir.1981), cert. den. 454 U.S. 858, 102 S.Ct. 310, 70 L.Ed.2d 154.

Construction of insurance contracts in Montana is governed by the general law of contract interpretation contained in Title 28, Chapter 3, Montana Code Annotated, and the case law which has developed thereunder in the context of insurance. The Montana Insurance Code, Title 33, M.C.A., further provides:

> Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application which is a part of the policy.

§ 33–15–316, M.C.A. (1985).

Transamerica contends that strict interpretation of the policy language at issue will reveal that Transamerica is entitled to judgment as a matter of law. Osborn argues (1) that the policy language is ambiguous and all doubts must be resolved in his favor, and (2) that construing the policy in accordance with Transamerica's interpretation would violate the letter and spirit of Montana insurance law.

In examining the policy language, the words are to be understood in their ordinary and popular sense rather than according to their strict legal meaning unless used by the parties in some technical sense. § 28–3–502, M.C.A. (1985). The "Declarations Page" of Osborn's policy shows limits of $100,000.00 for liability, $1,000.00 for medical payments, and $50,000.00 for "UM/UNDINS MOT." Under the "Abbreviation Key," "UM" means Uninsured Motorist and "UNDINS MOT" means Underinsured Motorist.

Underinsured motorist coverage is explained on Page 12 of the policy. Under these provisions, Transamerica agrees to

pay damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by a covered person and caused by an accident. "Underinsured motor vehicle" carries the definition set forth *ante*. There is no dispute that Osborn is a covered person under the policy.

Osborn claims that the definition of "underinsured motor vehicle" is ambiguous and inconsistent with the limits of liability expressed on the Declarations Page. The policy must be read as a whole and, if possible, the various parts reconciled and given meaning and effect. *Fitzgerald v. Aetna Ins. Co.*, 176 Mont. 186, 577 P.2d 370, 373 (1978).

The insurer is responsible for the language contained within the policy, and whenever a contract of insurance is drawn so that it is fairly susceptible of two constructions, one favorable to the insured and the other favorable to the insurer, the construction most favorable to the insured will be adopted. *State Farm Mutual Auto. Ins. Co. v. Queen*, — Mont. —, 685 P.2d 935 (1984). Under Montana law, the test to be used in interpreting ambiguous policy language is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would understand them to mean. *St. Paul Fire and Marine Ins. Co. v. Thompson*, 150 Mont. 182, 433 P.2d 795 (1967); *Alpha Real Estate Development, Inc. v. Aetna Life and Cas. Co.*, 174 Mont. 301, 570 P.2d 585 (1977). On the other hand, if the language of the insurance policy admits of only one meaning, there is no basis for interpretation of the policy language under the guise of ambiguity. *Universal Underwriters Ins. Co. v. State Farm Mutual Auto. Ins. Co.*, 166 Mont. 128, 531 P.2d 668 (1975).

Transamerica asks this court to determine as a matter of law that the policy language is clear and unambiguous and subject to only one interpretation. The definition of "underinsured motor vehicle" makes clear that it refers only to a vehicle which *is* insured, but for which the liability limit "is less than the limit of liability for *this coverage*" (emphasis added). The

first exclusion contained within this section excludes from underinsured motorist coverage any vehicle which is insured, but for which the limit of liability is *less* than the minimum amount required by state financial responsibility laws. A vehicle which meets this definition is *un*insured within the meaning of the policy.

The result of a strict interpretation of the policy language, applying Montana's financial responsibility laws, is that the uninsured motorist coverage will be triggered whenever the vehicle involved is covered by less than $25,000.00 of liability insurance or has no liability insurance at all. The underinsured motorist coverage will be triggered only when the vehicle involved carries insurance of at least $25,000.00 but less than $50,000.00. In the final analysis, under no set of circumstances will Transamerica be liable for more than $25,000.00 under the underinsured motorist provisions of the policy.

It is not a question of how I would interpret this contract in the first instance (indeed, I might well reach a contrary result.) Rather, it is how I perceive that the Montana Court would decide this case. I apply that standard for the remainder of this discussion.

A reasonable person in the position of an insured, viewing the coverage amounts on the Declarations Page, surely would not expect that "UNDINS MOT $50,000" actually means that the total amount for which his insurer will be liable will not exceed $25,000.00. The reasonable expectation of the insured at the time he purchases the policy will be that he has purchased $50,000.00 uninsured motorist coverage and $50,000.00 underinsured motorist coverage.

■ Montana law requires that contracts of insurance must be interpreted in light of all relevant provisions contained within the contract. *Aetna Ins. Co. v. Cameron*, — Mont. —, 633 P.2d 1212 (1981). Interpreting the Transamerica-Osborn policy as a whole, the language "... but its limit for bodily injury liability is less than the limit of liability for this coverage" is inherently inconsistent with the limits of $50,000.00

specified on the Declarations Page. The definition of underinsured motor vehicle contained on the twelfth page of the policy conflicts with the insured's reasonable belief that he is paying an additional premium for an additional $50,000.00 coverage.

The unfairness of the provision may be demonstrated by example. Insured is involved in an automobile accident, caused by the negligence of the other driver, "B". B carries liability insurance in the amount of $25,000.00. Insured sustains damages in the amount of $75,000.00. Transamerica's reading of the policy would result in payment to the insured of $25,000.00 from B's liability carrier and $25,000.00 from Transamerica. The additional $25,000.00 coverage for which the insured paid disappears in the policy translation. This illustrates an inherent ambiguity in the policy which cannot be reconciled.

Having determined that the policy language is ambiguous, the Court must ascertain the manner in which the policy should be construed so as to comport with the laws and public policy of the State of Montana. The Supreme Court of Montana has declared void clauses within insurance policies which are held to be in derogation of the letter and spirit of Montana law. *Sullivan v. Doe*, 159 Mont. 50, 495 P.2d 193 (1972); *McGlynn v. Safeco Ins. Co. of America*, — Mont. —, 701 P.2d 735 (1985).

Osborn cites numerous Montana cases in support of his position that public policy is to uphold the insured's expectation of what he "bought and paid for" and that Montana law prevents insurance companies from obtaining windfalls by relying on payments from collateral sources. Transamerica cites authority from jurisdictions outside Montana to demonstrate the reasonableness of its interpretation that the underinsured motorist coverage serves as a "low-end cushion" for the insured.

Transamerica claims that there is no public policy prohibiting contractual limitations on underinsured motorist coverage. Thus,

Transamerica argues that it has a right to rely upon the express contract language, under which the Huntley vehicle is *not* underinsured.

A review of the caselaw from other jurisdictions discloses a split of authority on this issue. The first viewpoint appears to be, as Transamerica argues, that underinsured motorist coverage is a guaranteed minimum amount of coverage purchased by the insured to enable recovery of benefits in an amount greater than that required by state financial responsibility laws. The second viewpoint, urged by Osborn, adopts the reasoning that underinsured motorist provisions will be triggered any time the payments from other sources fail to compensate the insured for his entire loss.

Jurisdictions adopting the position taken by Transamerica focus on the policy limits of the tortfeasor in determining whether the vehicle is underinsured. These states allow the insurer to reduce the amount it must pay under the underinsured motorist coverage by the amount the insured has collected from the tortfeasor's liability insurer.

For example, in *Rutherford v. Tennessee Farmers Mutual Ins. Co.*, 608 S.W.2d 843 (Tenn.1980), the plaintiff's damages exceeded $50,000.00, but the tortfeasor carried only $10,000.00 of liability insurance, which satisfied the state's financial responsibility laws. The plaintiff carried uninsured motorist coverage with limits of $50,000.00 per person, and underinsured motorist coverage which covered loss from "a motor vehicle with automobile liability insurance limits less than the limits of the uninsured motor vehicle coverage carried by [the] insured under the policy." Relying on the language of the policy, the court allowed the plaintiff to recover $40,000.00, the difference between the underinsured motorist limits and the tortfeasor's coverage.[1]

Other courts have denied recovery to plaintiffs under their underinsured motor-

---

1. The court was also guided by Tennessee's underinsured motorist legislation, which focuses on the policy limits of the tortfeasor. *See,*

Comment, *Underinsured Motorist Coverage in Tennessee,* 43 Tenn.L.Rev. 664 (1976).

ist coverage where the amount of the tortfeasor's liability limits was equivalent to the maximum liability under the underinsurance policy. *LaFrange v. United Services Auto. Assn.*, 1984–85 Automobile Law Reports—Insurance Cases ¶ 13466 (Ky.Ct. App.1984); *Muller v. Allstate Ins. Co.*, 627 S.W.2d 775 (Tex.App.1981).

A typical statute reflecting public policy of this nature is the state of Maine's Title 24–A M.R.S. § 2902(1), which defines an underinsured vehicle as "a motor vehicle for which coverage is provided, but in amounts ... less than the limits of the injured party's uninsured vehicle coverage." Interpreting this section, the Supreme Court of Maine has held that the legislature "intended to permit the injured party to recover the amount he would have received had the tortfeasor been insured to the same extent as the injured party." *Connolly v. Royal Globe Ins. Co.*, 455 A.2d 932, 936 (Me.1983). Under this interpretation, the court allowed plaintiff to recover the deficiency between the aggregate amount of the tortfeasor's liability coverage and the amount of plaintiff's uninsured motorist coverage. *Id.*

In *Wert v. Picciano*, 189 N.J.Super. 178, 459 A.2d 697 (1982), the plaintiff's policy language regarding underinsured motorist coverage was substantially identical to the language contained in Osborn's policy. The court considered the issue of whether the underinsured motorist coverage and the tortfeasor's liability coverage were intended to be cumulative or whether the underinsured motorist endorsement was meant to guarantee a minimum to its insured allowing deduction of amounts received under other policies. The court rejected the plaintiff's argument that the underinsured motorist endorsement should be construed in the same manner as the uninsured motorist endorsement, i.e., giving effect to a legislative mandate compelling coverage without offset for payments made under liability coverage. Rather, the court held that underinsured motorist cov-

erage "fills the vacuum" and guarantees to an insured motorist a minimum coverage up to the amount he chooses against the person who is insufficiently insured. *Id.*, 459 A.2d at 700. *See also, Dewberry v. Auto-Owners Ins. Co.*, 363 So.2d 1077, 1081 (Fla.1978).

Finally, the Pennsylvania Superior Court has considered underinsured motorist coverage in the context of that state's Uninsured Motorist Coverage Act, which neither requires nor refers to underinsured motorist coverage. *Votedian v. General Accident Fire & Life Assur. Corp.*, 1984–85 Automobile Law Reports—Insurance Cases ¶ 13,251 (Pa.Super.Ct.1984). Based upon the policy provisions at issue in that case, the court allowed set-off for sums paid by the tortfeasor's insurance and held:

> When underinsured motorist coverage is included, the terms and limitations thereof are not controlled by statute or by public policy but by the agreement reached by the parties. That agreement, as expressed in the policy of insurance, may place limitations upon underinsured motorist coverage, subject only to the requirement that the limitation be clearly worded and conspicuously displayed.

*Id.*

The position urged by Osborn has been adopted in a number of states, including South Carolina, Louisiana, Oklahoma, Minnesota, and Washington.[2] An example of a statute representing the "total damages" theory is the legislation enacted in South Carolina.

> [Automobile insurance] carriers shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured's liability coverage—to provide coverage in the event that damages are sustained in excess of the liability carried by an at fault insured or underinsured motorist.

S.C.Code Ann. § 56–9–831 (Supp.1982). Applying the above statute, the Supreme

**2.** For a discussion of state statutes adopting this theory, see Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds,* 55 Wash.L.Rev. 819 (1980), and Barns & Smith, *Washington's Underinsured Motorist Statute: Examining the Procedural Issues,* 17 Gonz.L.Rev. 269 (1982).

Court of South Carolina held void a policy provision of underinsured motorist coverage identical in substance to the Transamerica-Osborn policy provision. *Gambrell v. Travelers Ins. Co.*, 1984–85 Automobile Law Reports—Insurance Cases ¶ 12,-881 (S.C.1983). The court held in *Gambrell* that an insured procures underinsured motorist coverage to protect himself in case an at fault driver has liability coverage but the amount is insufficient to cover the damages sustained. "Accordingly optional underinsured coverage would always be over and above either the at fault driver's liability coverage or over and above the policyholder's own uninsured motorist coverage. This is the protection provided for the additional premium paid for the underinsured motorist coverage." *Id.* The court further stated that the construction urged by the insurer, and reflected in the policy language, would essentially make underinsured motorist coverage valueless in many instances. *Id. See also, Hoeschen v. South Carolina Ins. Co.*, 349 N.W.2d 833 (Minn.App.1984); *Garris v. Cincinnati Ins. Co.*, 1984–85 Auto. Law Reports ¶ 12,962 (S.C.1984); *United Services Auto. Assn. v. Winbeck*, 30 Wash.App. 769, 637 P.2d 996 (1981); *Millers Cas. Ins. Co. of Texas v. Briggs*, 100 Wash.2d 1, 665 P.2d 891 (1983).

In Montana, there is no statutory directive by which this Court may be guided. Likewise, there is no policy directive from the Montana Supreme Court specifically directed to underinsured motorists. Analogous public policy statements, however, have been expressed in the areas of uninsured motorist coverage and subrogation.

The Montana Supreme Court has identified specific legislative policy with respect to uninsured motorist laws—"to provide protection for the automobile insurance policyholder against the risk of inadequate compensation for injuries or death caused by the negligence of financially irresponsible motorists." *Mountain West Farm Bureau v. Neal*, 169 Mont. 317, 547 P.2d 79 (1977). The court has invalidated clauses by which the insurer attempted to limit its liability below the statutory minimum by deducting workers' compensation or "other

insurance" benefit payments. *Sullivan v. Doe*, 159 Mont. 50, 495 P.2d 193 (1972). The court recently struck down a policy provision that required physical contact for an insured to recover under his uninsured motorist coverage. *McGlynn v. Safeco Ins. Co. of America*, — Mont. —, 701 P.2d 735 (1985). Finally, the court has held that an insurer may not assert its right of subrogation unless and until the insured is made whole for his entire loss. *Skauge v. Mountain States Telephone & Telegraph Co.*, 172 Mont. 520, 528, 565 P.2d 628, 632 (1977); *Hall v. State Comp. Ins. Fund*, — Mont. —, 708 P.2d 234, 42 St.Rep. 1502 (1985).

These recent decisions indicate the policy behind the laws of Montana with respect to insurance. The underlying theme is the protection of the reasonable expectations of the insured at the time the policy was purchased. The insurance business is heavily regulated in Montana, and the courts usually have the benefit of some statutory guidance as they sift through the often convoluted language of insurance policies. In this case there is no such statutory guidance. However, "giving due deference to [the] pronouncements of policy issued by the Montana [Supreme] Court," I believe that this issue may be resolved in a manner "wholly consistent with the law of Montana as it may be seen to be developing." *Kelly v. General Motors Corp.*, 487 F.Supp. 1041, 1044 (D.Mont.1980).

Interpreting the Transamerica-Osborn policy in light of *Sullivan v. Doe* and *Skauge v. Mountain States Tel. & Tel. Co., supra.*, I hold that Osborn's position must be adopted as a matter of law. *Sullivan* held that the insurer could not offset workers' compensation benefits or payments received from other insurance against uninsured motorist coverage. *Skauge* held that an insurer has no right to subrogation until all of the insured's damages have been paid. There is no logical distinction between these cases and the case at bar. Had Transamerica paid Osborn $50,000.00 prior to the determination of Mountain West's or Farmer's liability,

Transamerica would not be entitled to subrogation because Osborn would not be made whole for his injuries. *Skauge, supra.* Allowing Transamerica to offset the payments received by Osborn against its liability as underinsurance carrier cannot be reconciled with these Montana decisions.

Therefore, it is the holding of the Court that, under the factual circumstances presented by this case, the Huntley vehicle was underinsured within the meaning of the policy as reasonably understood by the insured, and that the policy provision defining underinsured motor vehicle is void as against public policy of the State of Montana.

Accordingly, plaintiff Transamerica Insurance Group's motion for summary judgment is hereby DENIED, and defendant Charles Osborn's motion for summary judgment is GRANTED.

Judgment shall enter in accordance with this order, each party to bear his or its own costs.