**Robert M. KROMBACH, et al.,
Plaintiffs–Appellants,**

v.

**The MAYFLOWER INSURANCE COM-
PANY, LTD., Defendant–Respondent.**

**James R. FOX, et al.,
Plaintiffs–Appellants,**

v.

**The MAYFLOWER INSURANCE COM-
PANY, LTD., Defendant–Respondent.**

No. 56657.

Missouri Court of Appeals,
Eastern District,
Division Five.

Feb. 6, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 7, 1990.

The John J. Frank Partnership, Mary Coffey, Toni Griesbach, St. Louis, for plaintiffs-appellants.

Vaiana & Callahan, Anthony F. Vaiana, St. Louis, for defendant-respondent.

SIMON, Chief Judge.

In this consolidated appeal, appellants, Robert M. and Mary Krombach (Krombachs), and Joseph R. and Susan Fox (Foxes), appeal from the judgment entered in favor of respondent, The Mayflower Insurance Company, Ltd. (Mayflower), on its Motions for Summary Judgment on appellants' actions, seeking to recover for personal injuries sustained in a car accident under the underinsured motorists coverage provision of the Krombachs' personal comprehensive insurance policy issued by Mayflower. The Krombachs' policy provides for home and automobile coverage.

On appeal, appellants contend that the trial court erred in sustaining Mayflower's motions for summary judgment: (1) because Mayflower's policy specifically provides for underinsured motorist coverage over and above any coverage available as uninsured motorist coverage by inclusion of the critical sentence: "the term '*uninsured motor vehicle*' also includes an *underinsured vehicle*," and the policy is ambiguous in that the definition of "underinsured motor vehicle" is conspicuously absent; (2) that, if coverage is available under Mayflower's policy, any amounts payable to appellants under Part 6 of the uninsured (and underinsured) motorist provision were setoff by the $100,000 already collected from Richard Bolin, because each appellant is entitled to an additional $50,-000 under Mayflower's policy since the anti-stacking clause in the policy is against public policy and therefore without effect, and the set-off provision contained in Mayflower's policy is not a credit against Mayflower's limit of liability; rather it is a credit against appellants' damages. We reverse.

Initially, we note that a motion for summary judgment shall be sustained if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.-04(c). On appeal, we review the entire record in a light most favorable to the parties against whom judgment was entered. *Martin v. State Farm Mut. Auto. Ins. Co.*, 755 S.W.2d 638, 639 (Mo.App. 1988).

The facts are not in dispute. On August 15, 1986, Robert W. Krombach and his fourteen year old passenger, Casey Lee Fox, were struck head-on by a car driven by Richard Bolin (Bolin), who was driving under the influence of alcohol. The accident caused the death of Casey Lee Fox and the severe injuring of Mr. Krombach. At the time of the accident, Bolin was driving an automobile that was insured under an automobile policy providing liability coverage of $100,000 per person and $300,-000 per accident.

The Foxes, as parents of Casey Lee Fox, brought suit against Bolin in St. Louis City Circuit Court for the wrongful death of their minor daughter. The Krombachs also

brought suit against Bolin seeking damages for Mr. Krombach's injuries and Mrs. Krombach's loss of consortium.

The Foxes settled their claim against Bolin for $100,000. The Krombachs settled Mr. Krombach's claim of damages for $100,000 and Mrs. Krombach's claim for loss of consortium for $50,000.

The car that Mr. Krombach was driving when he was hit by Bolin was insured by Mayflower. The terms of the policy provided for liability coverage in the amount of $300,000 per accident, $4,000 per person medical payment, and $50,000 uninsured (and underinsured) motorist coverage. Part 6 of the Mayflower policy contains the uninsured and underinsured provision. The relevant language of Part 6 is set forth in section B which provides in pertinent part:

> PART 6: UNINSURED (AND UNDERINSURED) MOTORISTS
>
> A. WHO HAS UNINSURED MOTORISTS COVERAGE (Covered Persons)
>
> B. UNINSURED MOTORISTS COVERAGE
>
> We will pay damages which a *Covered Person* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of *bodily injury:*
>
> (a) sustained by a *Covered Person;* and
>
> (b) caused by an accident.
>
> ....
>
> By *"uninsured motor vehicle"* we mean a land *motor vehicle* or *trailer* of any type:
>
> (a) with no *bodily injury* liability bond or policy applying at the time of the accident.
>
> (b) with minimum legal liability bond or policy applying at the time of the accident as required by law governing the *insured auto.* However, the minimum is less than the Limit of Coverage of Part 6.
>
> (c) with a bodily injury liability bond or policy applying at the time of the accident, which is less than the minimum legal Limit of Coverage where the *insured auto* is principally garaged.

> ....
>
> The term *"uninsured motor vehicle"* also includes an *underinsured motor vehicle.* However, *"uninsured motor vehicle"* does not include any vehicle or equipment:
>
> (a) owned by you or a *relative* ...
>
> ....
>
> D. MAXIMUM PAYMENTS UNDER YOUR UNINSURED MOTORISTS COVERAGE
>
> The most we will pay for all claims from a single accident is the Limit of Coverage for Uninsured Motorists Coverage shown on the Coverage Data Page. This is the most that we will pay regardless of the number of:
>
> (a) *Covered Persons;*
>
> (b) claims made;
>
> (c) vehicles or premiums shown on the Coverage Data Page;
>
> (d) vehicles involved in the accident.
>
> Any amounts payable under Part 6 shall be reduced by all sums:
>
> (a) paid because of *bodily injury* by or on behalf of someone who may be liable. This includes all sums paid under Part 4 of this policy.
>
> ....
>
> Payments under this coverage will reduce the amount that a person is entitled to recover under Part 4 [liability] of this policy. Also, we will not make payments under this coverage for the same elements of loss paid or payable under the Medical Payments Coverage in Part 5.

Pursuant to this coverage provision, the Foxes and the Krombachs filed actions to recover under the underinsured motorists provision against Mayflower alleging that the limits of liability under Bolin's policy were insufficient to cover their damages. Mayflower filed its Motions for Summary Judgment on both actions, which were consolidated for the purpose of the hearing. The trial court sustained Mayflower's motions holding that the policy, "does not, under the undisputed facts, offered uninsured (underinsured) motorist coverage for the claim of Robert W. Krombach and

Mary Krombach, his wife, or for the claim of Joseph R. Fox and Susan Fox, his wife, for the death of their minor daughter, Casey Lee Fox."

In Mayflower's Memorandum in Support of its Motion for Summary Judgment and in both parties' briefs on appeal, the parties agree that both the Krombachs and the Foxes are "covered persons" under Part 6 of the policy. No question exists that the accident was the result of Bolin's negligence. Since no trial on appellants' damages has occurred, the extent to which damages exceed Bolin's liability insurance has yet to be determined.

In their first point on appeal, appellants maintain that the underinsured motorist coverage afforded them in Part 6 of Mayflower's policy applies when they are injured by a driver whose own liability insurance coverage is inadequate to compensate them for their injuries. Appellants argue that coverage occurs because of the inclusion of the sentence: "The terms *'uninsured motor vehicle'* also includes an *underinsured motor vehicle.*" They claim that this sentence creates an ambiguity because "underinsured motor vehicle" is not defined. They contend that the word "also" should be construed to mean another type of coverage is being added in addition to any coverage previously described in the policy. Therefore, they conclude that to give the sentence any meaning, the term "underinsured motor vehicle" must be defined to afford coverage where Bolin's insurance is inadequate to cover the appellant's damages.

■ The interpretation of the meaning of an insurance policy is a question of law. *Moore v. Commercial Union Ins. Co.,* 754 S.W.2d 16, 18[2–4] (Mo.App.1988). In approaching the resolution of this appeal, we are mindful that the function of this court is to interpret and enforce an insurance policy as written; not to rewrite the contract. *Eagle Star Ins. Co. v. Family Fun, Inc.,* 767 S.W.2d 623, 624 (Mo.App.1989). In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties.

*State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.,* 594 S.W.2d 950, 954[1–3] (Mo.App.1980).

■ The language of an insurance policy is ambiguous when it is reasonably and fairly open to different constructions. *Nixon v. Life Investors Ins. Co. of Am.,* 675 S.W.2d 676, 679[5–10] (Mo.App.1984). Ambiguity arises when there is duplicity, indistinctness, or uncertainty of meaning. *Id.* In interpreting whether the language used in the policy is ambiguous, the words will be tested in light of the meaning which would normally be understood by the layperson who bought and paid for the policy. *Robin v. Blue Cross Hosp. Serv., Inc.,* 637 S.W.2d 695, 698[2] (Mo. banc 1982) (quoting *Stafford v. Traveler's Ins. Co.,* 530 S.W.2d 23, 25 (Mo.App.1975)). If there is a conflict between a technical definition and the meaning which would reasonably be understood by the average layperson, the layperson's definition will be applied unless it plainly appears that the technical meaning is intended. *Greer v. Zurich Ins. Co.,* 441 S.W.2d 15, 27[12–14] (1969). To determine what meaning was intended, the ambiguous phrase is not considered in isolation, but by reading the policy as a whole with reference to associated words. *Nixon,* 675 S.W.2d at 679[5–10]. Being a contract designated to furnish protection, an insurance policy will be interpreted so as to afford coverage and not to defeat coverage. *Weathers v. Royal Indem. Co.,* 577 S.W.2d 623, 626[2] (Mo. banc 1979).

Where an insurance policy is open to different constructions, that most favorable to the insured must be adopted. *Nixon,* 675 S.W.2d at 679[5–10]. However, the court cannot create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is applicable. *State Farm Mut., Inc. v. Universal, Inc.,* 594 S.W.2d 950, 954[1–3] (Mo.App. 1980).

■ Mayflower argues that no ambiguity arises from the sentence: "The term *'uninsured motor vehicle'* also includes an *underinsured motor vehicle.*" Mayflower contends that the insurance policy,

under section B, subparts (b) and (c), specifically includes within its definition of "uninsured motor vehicle" two instances where a tortfeasor is "underinsured." Therefore, Mayflower argues that underinsured motor vehicles are included within the definition of "uninsured motor vehicle" and are to be considered "uninsured" under the terms of the policy. Thus, Mayflower claims it is clear that the purpose of the sentence at issue is to limit the meaning of an "underinsured motor vehicle" to the definition of an "uninsured motor vehicle" as contained in subsections (b) and (c) of section B.

Our research has disclosed no decision in Missouri nor statute that has defined the term "underinsured motor vehicle" in a situation similar to the present one. However, Mayflower contends that, in *Bergholdt v. Farmers Ins. Co.*, 691 S.W.2d 357 (Mo.App.1985) and *Cook v. Pedigo*, 714 S.W.2d 949 (Mo.App.1986), we have defined the term "underinsured motor vehicle" or "motorist" so that Bolin cannot be considered to be an underinsured motorist for the purpose of its policy. In *Bergholdt*, in interpreting the plain language of the uninsured motorist coverage under an insurance policy, we stated that the policy's definition of an uninsured motor vehicle under the uninsured motorist coverage included a vehicle with liability insurance in amounts less than the limits carried by the insured under the uninsured motorist coverage. *Bergholdt*, 691 S.W.2d at 360[3]. We then referred to the provision as expanding the concept of an uninsured motorist to include an underinsured motorist, and found that coverage was available to Bergholdts under this policy provision. *Id.* The *Bergholdt* opinion does not provide a definition of "underinsured motorist," it merely interprets the plain meaning of the insurance policy at issue and finds coverage available in a manner consistent with the terms of the policy. Therefore, *Bergholdt* does not supply us with a definition of "underinsured motorist" that is applicable to the present case.

Similarly, in *Cook v. Pedigo*, 714 S.W.2d 949 (Mo.App.1986), we merely defined "underinsured automobile" for the purposes of broadening the definition of an uninsured motorist under the uninsured motorist protection statute, § 379.203 RSMo 1986. *Id.* at 951. We held that an underinsured motorist, one who carries a liability policy in an amount less than the statutory minimum, is to be considered an uninsured motorist under § 379.203 RSMo 1986. Clearly, this definition of "underinsured" is intended to be included in the definition of "uninsured" under the statute. Therefore, only those vehicles to which the statute may apply are subject to this interpretation of an underinsured motor vehicle. In the present case, Bolin was driving a vehicle that is not an "uninsured motor vehicle" under the statute because he neither lacked liability insurance nor carried less than the statutorily required minimum of $25,000/$50,000 under § 303.030.5 RSMo 1986.

We acknowledge that subparts (b) and (c) of Section B incorporate into Mayflower's policy the definitions of "uninsured motor vehicle" that are developed in *Bergholdt* and in *Cook*. However, these definitions, as set forth in subparts (b) and (c), are applicable to the term "uninsured motor vehicle." They do not provide guidance as to the definition of the underinsured motorist coverage which is referred to on the Renewal Coverage Data page and in the sentence at issue in section B of Part 6. We must, therefore, disagree with Mayflower's contention that "underinsured" has been defined in Missouri by *Bergholdt* and *Cook* so as to foreclose consideration of appellants' claim. Thus, we shall review this issue in light of relevant cases from other jurisdictions.

Currently, a majority of states have enacted statutes that require underinsured motorist coverage. 2 A. Widiss, Uninsured and Underinsured Motorist Insurance, Chap. 31, § 315, at 7 (1987). In order to determine when such coverage applies, these statutes have defined the term "underinsured." Three primary definitions are used by these statutes and are based on a comparison of the tortfeasor's liability limits with the amounts of the insured's: (1) uninsured coverage; (2) underinsured coverage; or (3) damages. 2 *A. Widiss,*

*supra,* § 35.2, 40–47. Because of the various statutory definitions, there is a split of authority among the states as to the definition of "underinsured". In some states, courts have held that an "underinsured motor vehicle" is deemed to exist when the liability limits on the tortfeasor's vehicle are less than the insured's uninsured/underinsured motorist limits. *See Votedian v. General Fire & Life Assn. Corp.,* 330 Pa.Super. 13, 478 A.2d 1324 (1984); *Wert v. Picciano,* 189 N.J.Super. 178, 459 A.2d 697 (1982); *Rutherford v. Tennessee Farmers Mut. Ins. Co.,* 608 S.W.2d 843 (Tenn.1980). Other state courts define a tortfeasor's vehicle to be underinsured when the insured's damages exceed the tortfeasor's liability limits. *Transamerica Ins. Group v. Osborn,* 627 F.Supp. 1405 (D.Mont.1986); *Gambrell v. Travelers Ins. Co.,* 280 S.C. 69, 310 S.E.2d 814 (1983); *Hoeschen v. South Carolina Ins. Co.,* 349 N.W.2d 833 (Minn.App.1984).

In our review of the case law of other jurisdictions, we find persuasive the statement made on this issue by the Supreme Court of Rhode Island in *Gentry Ins. Co. v. Grenga,* 556 A.2d 998 (1989). In confronting a similar absence of a definition of the term "underinsured," the court stated, "the normal purchaser of insurance would understand the term 'underinsured coverage' to mean that he or she will be compensated, up to the limit of coverage, if injured by a driver carrying liability insurance insufficient to meet his or her losses." *Id.* at 1000[1]. This description of underinsured motorist coverage has been echoed recently by our brethren of the Western District in *Geneser v. State Farm Mut. Auto. Ins. Co.,* 787 S.W.2d 288, 289 (Mo.App.1989). The court stated that, "a motorist can purchase underinsurance coverage from his insurance company to pay for losses incurred because another negligent driver's insurance is insufficient to cover this [sic] or her actual loss." *Id.*

Here, appellants argue that most consumers would expect to be purchasing underinsured coverage that would entitle them to compensation when the tortfeasor's liability insurance did not cover completely the victim's injuries. Therefore, even though the term "underinsured motor vehicle" could mean a vehicle with liability coverage in an amount less than that required by state law or less than the victim's own uninsured/underinsured coverage, appellants contend that the insurance policy should be construed consistent with consumer expectations. Appellants maintain that any other construction would result in the Krombachs having purchased illusory underinsured coverage under Part 6 of Mayflower's insurance policy.

Additionally, appellants contend that the inclusion of the word "also" in the sentence at issue supports their argument that they are entitled to underinsured coverage. They allege that Mayflower is providing "underinsured motor vehicle" coverage in addition to any coverage previously described in the policy under subsection (b) and (c) of the definition of "uninsured motor vehicle." For the word "also" to have any meaning whatsoever, appellants claim that the sentence must be construed to add underinsured motorist coverage because that is the only situation not already covered by subparts (a) through (c).

Mayflower's insurance policy consists of two separate parts. The first part is a two page, typed declaration page entitled "Renewal Coverage Data." In the "Limits of Coverage" section of the Renewal Coverage Data page, the policy specifically provides for coverage in the amount of $50,000 each accident under Part 6, titled "UNINSURED (AND UNDERINSURED) MOTORISTS."

The second part of the policy is a booklet entitled "Personal Comprehensive Protection" which contains, on page twenty-nine, an explanatory provision entitled PART 6: UNINSURED (AND UNDERINSURED MOTORIST). Section B of this provision defines the term "uninsured motor vehicle." However, the term "underinsured motor vehicle" is not defined or explained in Part 6 or in the separate "glossary" on page four of the "Personal Comprehensive Protection" booklet. The only reference to an underinsured motor vehicle occurs in a sentence in section B which states: "The

term *'uninsured motor vehicle'* also includes an *underinsured motor vehicle.*"

The policy language is reasonably and fairly open to different constructions. The Renewal Coverage Data page specifically provides for uninsured and underinsured motorist coverage. The Krombachs, in reading their policy, would reasonably expect to receive coverage for both uninsured and underinsured motorists. Reading the Renewal Coverage Data page, a layperson who bought and paid for this policy would normally understand that he had $50,000 of uninsured motorist coverage and $50,000 of underinsured motorist coverage. Reading section B of Part 6, no definition of "underinsured motor vehicle" would be apparent to explain the exact nature of underinsured motorist coverage provided under the policy. In light of the stated underinsured motorist coverage on the Renewal Coverage Data page, this lack of definition alone creates an ambiguity as to what coverage the Mayflower policy provides under Part 6. Further, examining the coverage provided in Part 6 and finding no definition of "underinsured motor vehicle," the Krombachs would attach a meaning to the term which would be reasonably understood by laypersons.

Not unexpectedly, a layperson would understand the terms "underinsured motor vehicle" or "underinsured motorist" coverage to provide for compensation up to the limit of coverage, where the tortfeasor's insurance is insufficient to cover his loss. *Sentry Ins. Co. v. Grenga*, 556 A.2d 998 (R.I.1989); *see also Geneser v. State Farm Mut. Auto. Ins. Co.*, 787 S.W.2d 288, 289 (Mo.App.1989). Therefore, a layperson would not know, upon reading section B, that two of the definitions used for "uninsured motor vehicle" are actually "underinsured" situations. Accordingly, a layperson would not understand the sentence at issue to include an "underinsured motor vehicle" into the definition of "uninsured motor vehicle," but would read it as providing underinsured motorist coverage as set forth in the Renewal Data Coverage page.

Additionally, the inclusion of the word "also" would indicate that the sentence at issue adds another type of coverage than that already present in section B under subparts (b) and (c). In *Sho–Me Power Corp. v. City of Mountain Grove*, 467 S.W.2d 109, 112[1] (Mo.1971), our Supreme Court accepted the definition of "also" found in Webster's New International Dictionary, Second Edition, Unabridged, which states several meanings including "in addition;" "as well;" "besides;" "too." *Id.* Applying any of these meanings of "also" to the sentence in question, a layperson could conclude that the sentence grants additional coverage over that already enumerated in subparts (a) through (c). Thus, viewing the Renewal Coverage Data page and the language of Section B, we conclude that ambiguity exists in the Mayflower policy because the term "underinsured motor vehicle" is not defined in the sentence: "The term *'uninsured motor vehicle'* also includes an underinsured motor vehicle."

This construction in favor of an ambiguity in the policy results because to do otherwise would render the sentence meaningless and provide illusory coverage. Subparts (a) through (c) define what is included under the term "uninsured motor vehicle" and accordingly, refer only to the coverage available under the uninsured motorist provision of the Mayflower insurance policy. Irrespective of the fact that subparts (b) and (c) contain descriptions of vehicles that are considered to be "underinsured," the policy states that these are to be included in the definition of "uninsured motor vehicle." If we were to accept Mayflower's interpretation that the inclusion of subparts (b) and (c) is for the purpose of incorporating underinsured coverage within uninsured coverage, then the sentence at issue would be meaningless. An insurance policy must be construed as a whole, and every clause must be given some meaning if it is reasonably possible to do so. *Brugioni v. Maryland Casualty Co.*, 382 S.W.2d 707, 712[5, 6] (Mo.1964).

■ Furthermore, the sentence should be construed to include additional underinsured motorist coverage, otherwise the Renewal Coverage Data page, by its terms,

provides for $50,000 of underinsured coverage which does not exist under Part 6. We cannot indulge in a construction that would render a portion of the policy illusory. *Cano v. Travelers Ins. Co.*, 656 S.W.2d 266, 271[5, 6] (Mo. banc 1983). Therefore, the sentence at issue leaves unclear what underinsured motorist coverage is provided by the Mayflower policy. Finding Mayflower's insurance policy to be ambiguous as to underinsured vehicle and/or motorist coverage, we conclude that Mayflower was not entitled to a summary judgment as a matter of law. To achieve judicial economy, we hold that Mayflower's policy provides "underinsured motorist coverage" for the total damages the Krombachs and Foxes sustained, subject to the coverage amount limitation provided by the policy for "Uninsured (and Underinsured) Motorists."

In their second point on appeal, appellants maintain that if underinsured coverage is available under Mayflower's policy, they cannot be denied coverage due to the anti-stacking and set-off provisions in the policy. This issue was not ruled on by the trial court and thus we shall not review it.

Judgment reversed.

DOWD, P.J., and JOSEPH J. SIMEONE, Senior Judge, concur.