**Bradley M. SCHUSTER,
Plaintiff–Appellant,**

v.

**SHELTER MUTUAL INSURANCE
COMPANY, Defendant–
Respondent.**

No. 18068.

Missouri Court of Appeals,
Southern District,
Division Two.

May 19, 1993.

Motion for Rehearing or Transfer
Denied June 10, 1993.

Application to Transfer Denied
Aug. 17, 1993.

Stephen F. Gaunt of Steelman & Beger, Rolla, for plaintiff-appellant.

J. William Turley of Williams, Robinson, Turley & White, Rolla, for defendant-respondent.

MONTGOMERY, Presiding Judge.

Bradley M. Schuster (Plaintiff) brought this action in two counts against Shelter Mutual Insurance Company (Shelter) for a declaratory judgment and for recovery of medical expenses resulting from an automobile accident. Plaintiff's suit arises from his collision with a school bus on September 13, 1990, while he was operating an uninsured 1979 International Scout owned by his stepfather, Pete Walker. As a result of the accident, Plaintiff incurred medical expenses.

At the time of the accident Plaintiff was the named insured on a motor vehicle liability policy with Shelter which included medical payment coverage. The declarations of the policy described Plaintiff's 1980 Ford Ranger.

Plaintiff, a high school student, lived at home with his mother, brother and stepfather during the time in question. At trial, Plaintiff's statement was introduced into evidence by stipulation. Plaintiff indicated that on September 13, 1990, he had taken the Scout keys from their customary location in the kitchen and borrowed the Scout. When asked, "So anytime you need it, you just get it," Plaintiff answered yes. He further testified he only drove the Scout "once in a while."

After a non-jury trial, the trial court determined Shelter's policy with Plaintiff afforded him no liability coverage and that Plaintiff was not entitled to recover his medical expenses. Plaintiff appeals, raising two alleged errors.

The first prong of Plaintiff's point I suggests the trial court erred in entering judgment in favor of Shelter on Count II of Plaintiff's petition because the insurance contract did not limit liability coverage for bodily injury to accidents resulting from use of the described auto or a non-owned auto, and the vehicle was not a non-owned auto as defined in the insurance policy or

as that term would be understood by a lay person.

Plaintiff begins his argument by directing our attention to Shelter's policy which provides, in pertinent part:

### PART I—AUTO LIABILITY

COVERAGE A—BODILY INJURY LIABILITY;

COVERAGE B—PROPERTY DAMAGE LIABILITY

**We** will pay on behalf of the **insured** all sums, within the limits of liability of these coverages, which the **insured** shall become legally obligated to pay as damages because of:

(1) **Bodily injury** sustained by any person; and

(2) **Property damage** sustained by any person, caused by accident resulting from the ownership, maintenance, or **use** of the **described auto** or a **non-owned auto.**

Plaintiff argues the bodily injury provision (subparagraph (1)) stands by itself separate and distinct from the property damage provision (subparagraph (2)). He suggests the phrase "caused by accident resulting from the ownership, maintenance, or use of the described auto or a non-owned auto," applies only to the property damage provision after considering the "punctuation and the way the language is set up in the contract."

Relying on *Krombach v. Mayflower Ins. Co., Ltd.,* 785 S.W.2d 728 (Mo.App.1990), Plaintiff indicates an ambiguity exists in the quoted policy provisions and states "it is clear that a lay person purchasing this policy would believe that he was covered for all bodily injury he may become obligated to pay as damages due to his operation of *any* automobile."

The standard of review and rules regarding policy ambiguity are as follows: 1) whether or not language is ambiguous is a question of law for the trial court, *West v. Jacobs,* 790 S.W.2d 475, 480 (Mo. App.1990); 2) in determining whether the trial court has erred as a matter of law in interpreting the contract as unambiguous, *Anchor Centre Partners Ltd. v. Mercantile Bank, N.A.,* 803 S.W.2d 23, 32 (Mo. banc 1991), the appellate court reviews the policy itself to determine if any ambiguity exists, *Maryland Casualty Co. v. Martinez,* 812 S.W.2d 876, 881 (Mo.App.1991); 3) the language in question is ambiguous if it is "fairly susceptible of two interpretations," *English v. Old American Ins. Co.,* 426 S.W.2d 33, 36 (Mo.1968); and, 4) if no ambiguity exists, then the policy must be construed according to its plain meaning, *Krombach v. Mayflower Ins. Co., Ltd.,* 785 S.W.2d 728, 731 (Mo.App.1990). *Learfield Communications v. Hartford Acc. & Indem.,* 837 S.W.2d 299, 300 (Mo. App.1992).

*Krombach* does not aid Plaintiff since the Court there construed a policy provision concerning underinsured motorist coverage. Plaintiff cites no authority construing policy provisions like those here in the Shelter policy.

We do not find the language ambiguous in subsections (1) and (2) under coverages A and B of Shelter's policy. An ambiguity in an insurance contract exists only where there is doubt or uncertainty as to its meaning and it is fairly susceptible to two interpretations. *Earl v. State Farm Mut. Auto. Ins. Co.,* 820 S.W.2d 623, 625 (Mo.App.1991). The meaning of the policy language in question is not doubtful nor uncertain and must be construed according to its plain meaning. Simply stated, Shelter's policy provides liability coverage to Plaintiff for bodily injury and property damage which results from the use of the described auto or a non-owned auto.

A totally strained interpretation must be applied to achieve the result urged by Plaintiff. It is implausible to believe Shelter's policy would afford protection from bodily injury claims resulting from the use of *any* auto, but limit protection against property damage claims to only those arising from the use of the "described auto or a non-owned auto."

Perhaps anticipating our conclusion, Plaintiff argues an ambiguity in the policy still exists as to the meaning of "non-

owned" automobile. With further reliance on *Krombach*, Plaintiff points to the rule that "[i]f there is a conflict between a technical definition and the meaning which would reasonably be understood by the average lay person, the lay person's definition will be applied unless it plainly appears that the technical meaning is intended." 785 S.W.2d at 731.

Pertinent definitions appear in the policy as follows:

(4) **Described auto** means the vehicle described in the Declarations and includes a **temporary substitute auto** ....[1]

....

(6) **Non-owned auto** means any **auto** other than

(a) the **described auto,** or

(b) an **auto** owned in whole or in part by, or furnished or available for regular use of, either **you** or any resident of **your** household.

▆▆ Apparently Plaintiff believes the policy definition of non-owned automobile is overly technical, but he cites no authority for that position. We find there is no conflict between the definition of non-owned automobile and the meaning which would reasonably be understood by the average lay person. Applied to the facts here, the definition of a non-owned auto specifically excludes any auto owned by a resident of the household or available for the regular use of the insured. This language is plain and unambiguous. Therefore, it must be enforced as written. *Auto Club Inter–Ins. Exch. v. Farmers Ins. Co.,* 778 S.W.2d 772, 774 (Mo.App.1989). The burden of demonstrating error and the incorrectness of the judgment below is on Plaintiff. *Pearson v. Pearson,* 687 S.W.2d 677, 679 (Mo.App. 1985). Plaintiff fails to carry his burden.

▆▆ In the second prong of this point Plaintiff contends the public policy of this state requires that the liability portion of Shelter's policy provide him with coverage for the accident of September 13, 1990.

Plaintiff asserts if Shelter's definition of "non-owned" auto is applied here to defeat bodily injury coverage, the insurance contract violates the public policy of Missouri reflected by § 303.190.3 [2] of the Motor Vehicle Financial Responsibility Law (MVFRL). That section provides:

Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him, within the said territorial limits and subject to the same limits of liability as are set forth above with respect to any owner's policy of liability insurance.

According to Plaintiff, this section clearly requires Shelter to provide him coverage when he operates any motor vehicle not owned by him. He argues this section has no technical definition of "non-owned" auto, like that found in Shelter's policy. Therefore, Shelter's restrictive definition conflicts with the statute.

Plaintiff relies on *Halpin v. American Family Mut. Ins. Co.,* 823 S.W.2d 479 (Mo. banc 1992); *State Farm Mut. Auto. Ins. Co. v. Zumwalt,* 825 S.W.2d 906 (Mo.App. 1992); *State Farm Mut. Auto. Ins. Co. v. Andrews,* 789 S.W.2d 144 (Mo.App.1990); and *American Standard Ins. Co. v. Dolphin,* 801 S.W.2d 413 (Mo.App.1990). None of these cases deal with a coverage question arising from an insured's use of a non-owned auto. For example, in *Halpin,* the Supreme Court held that the MVFRL effects a partial invalidity of household exclusion clauses in automobile liability insurance contracts. The Court agreed that "public policy requires that a contract of liability insurance provide the coverage indicated in § *303.190* so that the insured will be in compliance with § *303.025.*" *Id.* at 481.

We do not believe *Halpin* nor the other cases cited by Plaintiff require us to find

---

**1.** Since Plaintiff does not contend the Scout was a temporary substitute auto, our decision does not discuss potential coverage on that basis.

**2.** Statutory references are to RSMo 1986 unless otherwise indicated.

Shelter's definition of a non-owned automobile violates public policy.

First, § 303.025 [3] requires the "owner" of a motor vehicle to maintain "financial responsibility." By that statute, one method of maintaining financial responsibility is through the purchase of a "motor vehicle liability policy which conforms to the requirements of the laws of this state." The parties stipulated here that Shelter's policy was certified as proof of financial responsibility.

Second, a motor vehicle liability policy is required to conform with § 303.190 which provides:

1. A **"motor vehicle liability policy"** as said term is used in this chapter shall mean an owner's or an operator's policy of liability insurance, certified as provided in section 303.170 or section 303.180 as proof of financial responsibility, and issued, except as otherwise provided in section 303.180 by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

2. Such owner's policy of liability insurance:

(1) Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted....

Plaintiff's argument overlooks the definition of a "motor vehicle liability policy" as an owner's or an operator's policy of liability insurance. The facts are undisputed that Plaintiff was the owner of a 1980 Ford Ranger and as such purchased an owner's, not an operator's, policy of liability insurance on that vehicle. The distinction between an owner's or an operator's policy is clear from reading § 303.190.2 and .3.

Shelter's policy of liability insurance expressly designated coverage for Plaintiff's 1980 Ford Ranger (the described auto) and any other non-owned auto as that term is defined in the policy. Therefore, Shelter's policy conformed to the requirements of § 303.190.2(1).

As Shelter forcefully argues, under the MVFRL the legislature certainly intended that all vehicles be covered by insurance but did not intend to enact a scheme by which only one policy of insurance need be purchased per household and several cars operated thereunder. If we adopted Plaintiff's position, households with several drivers could purchase one policy of insurance to cover all vehicles owned by them, thereby obtaining multicar coverage with payment of a one-car premium.

The fallacy of Plaintiff's argument is demonstrated by reviewing the purpose for extending coverage to a "non-owned" auto. This additional coverage is commonly referred to as the "drive other cars" provision. *Earl*, 820 S.W.2d at 624.

The effect and purpose of such a clause is well stated in a statement with reference to "drive other cars" provisions in an Annotation in 86 A.L.R.2d 937, 940, as follows: "The purpose of the 'drive other cars' provision in an automobile liability policy is to cover occasional or incidental use of other cars without the payment of an additional premium, but to exclude the habitual use of other cars, which would increase the risk on the insurance company without a corresponding increase in the premium."

*State Farm Mut. Auto. Ins. Co. v. Western Cas. & Sur. Co.*, 477 S.W.2d 421, 424 (Mo. banc 1972).

Plaintiff's lack of liability coverage for the September 13, 1990, accident results from his stepfather's violation of § 303.025. The MVFRL contemplates that each owner of an auto maintain financial respon-

---

**3.** § 303.025 reads, in pertinent part:

1. No owner of a motor vehicle registered in this state shall operate the vehicle, or authorize any other person to operate the vehicle, unless the owner maintains the financial responsibility as required in this section. Furthermore, no person shall operate a motor vehicle owned by another with the knowledge that the owner has not maintained financial responsibility unless such person has financial responsibility which covers his operation of the other's vehicle.

2. A motor vehicle owner shall maintain his financial responsibility in a manner provided for in section 303.160, or with a motor vehicle liability policy which conforms to the requirements of the laws of this state.

sibility and the stepfather failed to do so. The MVFRL does not establish a public policy of requiring insurers, without payment of a premium, to furnish liability coverage on autos regularly available to an insured "anytime he needs it." Point I is denied.

Plaintiff's last point claims the trial court erred in entering judgment for Shelter on Count I of the petition in that the medical payment coverage exclusion relied upon by Shelter does not apply because the Scout was not owned by or available for the regular use of Plaintiff or a relative as defined under the policy.

Under the medical pay coverage, Shelter promised to pay Plaintiff his reasonable medical expenses incurred within three years from the date of accident for necessary medical services for his bodily injury caused by accident. The parties have stipulated that Plaintiff was a named insured and that he has incurred reasonable medical expenses exceeding $5,000 as a result of being struck by a motor vehicle on September 13, 1990.

The exclusion in question recites:
COVERAGE C [medical payments] does not apply to **bodily injury**:

. . . .

(2) Sustained by **you** or a **relative** while **occupying** an **auto** other than the **described auto,** owned in whole or in part by, or furnished or available for regular use by **you** or a **relative**. . . .

■ As we understand Plaintiff's argument, Shelter had the burden to prove the above exclusion applied to its liability for medical payments to Plaintiff, *citing Walters v. State Farm Mut. Auto. Ins. Co.,* 793 S.W.2d 217 (Mo.App.1990). Plaintiff claims Shelter has failed to carry that burden since the evidence shows at most, occasional, isolated, and temporary use of the Scout by Plaintiff which falls far short of establishing availability for regular use. To support this argument, Plaintiff points to testimony of his mother and stepfather which indicated that Plaintiff "practically never" drove the Scout. However, this argument ignores Plaintiff's own statement that he drove the Scout anytime he needed it.

■ Our review of this point is governed by Rule 73.01(c). As that rule is interpreted, this Court is to affirm the trial court's determination unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *In re Marriage of Lafferty,* 788 S.W.2d 359, 361 (Mo.App.1990).

■ Due regard is given by this Court to the trial Court's determination on the credibility of witnesses. Rule 73.01(c)(2). The trial court is free to believe or disbelieve all, part or none of the testimony of any witness. *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654 (Mo. banc 1989). The trial court may disbelieve testimony even when uncontradicted. *Robinson v. Estate of Robinson,* 768 S.W.2d 676, 677 (Mo.App.1989). Since no findings of fact were requested or made, all facts are presumed found in accordance with the result reached. Rule 73.01(a)(2).

■ From Plaintiff's own statement the trial court had substantial evidence to determine the Scout was available for his regular use. Such a finding defeats Plaintiff's medical pay claim. Based on our limited review, we are unable to say the trial court's determination was incorrect.

The judgment is affirmed.

PREWITT and GARRISON, JJ., concur.