Brian C. HUNT and Jennifer
Hunt, Respondents,

v.

Robert L. EVERETT, Defendant,

and

Shelter Insurance Company, Appellant.

No. WD 65340.

Missouri Court of Appeals,
Western District.

Jan. 10, 2006.

James Joseph Cramer, Overland Park, KS, for appellant.

Robert Schneiders and James Roy Hall, Oak Grove, for respondent.

PAUL M. SPINDEN, Presiding Judge.

Brian C. Hunt was injured when the car that Robert Everett was driving did not stop for a red light and crashed into Hunt's car. Everett was delivering newspapers for the *Kansas City Star* as an independent contractor and had no automobile insurance. Hunt and his wife sued Everett for negligence and sued the *Star* for vicarious liability and for independent negligence in hiring Everett. The parties stipulated that Everett and the *Star* were joint tortfeasors and that the Hunts' damages exceeded $450,000. The Hunts settled their claim against the *Star* for $340,000, and the circuit court entered judgment on the *Star's* motion for partial summary judgment, saying, "The Kansas City Star has no liability or responsibility for the alleged negligence of Robert Everett."

The Hunts impleaded Shelter Insurance Company as a defendant in the claim pending against Everett. The Hunts had three insurance policies issued by Shelter: two, which included uninsured motorist limits of $25,000, and a third, which included an uninsured motorist limit of $50,000 per person. The parties agreed that the policies could be stacked and that $100,000 in coverage was available. The policies, however, each had an offset provision that said, "Any amount payable under the terms of this Coverage will be reduced by any amount paid or payable for the same damages to or for the insured ... by or for any person or organization who is or may be held legally liable for the bodily injury to such insured." The parties stipulated that the $340,000 settlement with the *Star* was an offset. They, however, disputed whether or not that amount should be subtracted from the Hunts' total damages of $450,000 or from Shelter's maximum liability of $100,000.

After a bench trial in which Everett did not appear, the circuit court entered judgment against Shelter and ordered it to pay $100,000. The circuit court found that the settlement amount of $340,000 should be offset against the Hunts' total damages because of the policies' language and Missouri's public policy concerning uninsured motorist coverage.

In appealing this judgment, Shelter presents three points. First, it argues that the circuit court erred in its reading of the policy language. Second, it argues that the circuit court erred in finding that insurers cannot reduce uninsured motorist coverage by amounts a joint tortfeasor pays to the insured. Third, it argues alternatively that the Hunts' recovery should be limited to $75,000.

■ In reviewing a court-tried case, we affirm the circuit court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence or erroneously declares or applies the law. *American Standard Insurance Company of Wisconsin v. Bracht*, 103 S.W.3d 281, 286 (Mo.App.2003). "When a case is tried on stipulated facts ..., the only issue on appeal is whether the court drew the proper legal conclusions from those facts." *Tapley v. Shelter Insurance Company*, 91 S.W.3d 755, 757 (Mo.App. 2002).

■ Shelter's policy said:

**PART IV—UNINSURED MOTORISTS**

COVERAGE E—UNINSURED MOTORISTS (DAMAGES FOR BODILY INJURY)

**We** will pay damages for **bodily injury** sustained by an **insured** which such insured ... is legally entitled to recover from the owner or operator of an **uninsured motor vehicle.**[1]

....

LIMITS OF LIABILITY

....

(2) Any amount payable under the terms of this Coverage will be reduced by any amount paid or payable for the same damages to or for an insured,

(a) by or for any person or organization who is or may be held legally liable for the bodily injury to such insured[.]

▄▄▄ This case turns on the meaning of "[a]ny amount payable under the terms of this Coverage." The courts are to enforce insurance contracts as written unless an ambiguity requires the court to impose various rules of interpretation. *American Family Mutual Insurance Company v. Ward*, 789 S.W.2d 791, 795 (Mo. banc 1990). An ambiguity arises when contract language is duplicitous, indistinct, or uncertain, leaving its interpretation open to differing reasonable constructions. *Krombach v. Mayflower Insurance Company, Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992). When an insurance contract's language is ambiguous, a rule of interpretation is that we apply a meaning that would ordinarily be understood by the insured and, because the insurer typically is the party responsible for the ambiguity as the contract's drafter, we construe ambiguous provisions in an insurance policy against the insurer. *Id.*

Shelter's policy is ambiguous. Part IV of the policy says that Shelter "will pay damages for bodily injury sustained by an insured which such insured ... is legally

entitled to recover from the owner or operator of an uninsured motor vehicle," but, further down in a paragraph limiting Shelter's liability, the policy refers to "amount[s] payable under the terms of this Coverage." This makes unclear whether "amount payable" refers to the insured's total damages or to the maximum amount of uninsured motorists coverage.

The Supreme Court reached the same conclusion with markedly similar policy language in *Krombach*. The policy in that case said:

Part 6: UNINSURED (AND UNDERINSURED) MOTORIST

....

B. UNINSURED MOTORIST COVERAGE

We will pay damages which a Covered Person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

(a) sustained by

1. covered person; and

(b) caused by an accident.

....

D. MAXIMUM PAYMENTS UNDER YOUR UNINSURED MOTORIST COVERAGE

....

Any amounts payable under Part 6 shall be reduced by all sums:

(a) paid because of bodily injury by or on behalf of someone who may be liable.

The Supreme Court could not determine whether "amounts payable" referred to the insured's total damages under Subpart B or to the insured's damages up to the maximum amount of coverage under Subpart D of Part 6. *Id.* at 211. Shelter's policy suffers the same ambiguity.

1. The emphasis was in the original.

Shelter argues that "amount payable" is not ambiguous because it is followed by "under the terms of this Coverage." Shelter argues that, because "this Coverage" refers clearly to uninsured motorists coverage under Part IV, "amount payable" unambiguously means uninsured motorists benefits.

Even if we were to adopt this position, it would not cure the ambiguity. Part IV discusses uninsured motorists benefits, but it also mentions the insured's total damages: Shelter must pay "damages for bodily injury sustained by an insured which such insured ... is legally entitled to recover." "[A]mount payable," therefore, could either be the amount owing under Part IV or the total damages sustained by the Hunts.

Indeed, the Supreme Court declared in *Krombach* that "amounts payable" was ambiguous despite its being followed by a specific, unambiguous reference to a precise section of the insurance policy. *Id.* As in *Krombach*, we have a precise reference to a specific policy section, but the ambiguity remains, and, as the *Krombach* court noted, "Had [the insurer] intended to reduce the coverage limits by any amount paid by a tortfeasor or his insurer, [the insurer] could have so stated in plain and unequivocal terms." *Id.* (*citing Rodriguez v. General Accident Insurance Company of America,* 808 S.W.2d 379, 381 (Mo. banc 1991)). The offset provision in *Rodriguez* said, "[T]he limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." 808 S.W.2d at 381. Shelter's offset provision is not so clear.

Other cases involving similar language have reached the opposite conclusion. *E.g., Keating v. Gavrilovici,* 861 S.W.2d 205, 207–08 (Mo.App.1993) ("[a]ny amounts otherwise payable for damages under this coverage" is unambiguous). But these cases seem to conflict with *Krombach.* Thus, given the closeness of the language in Shelter's policy with that in *Krombach,* we persist in our conclusion that the policy was ambiguous.

The circuit court and the parties discussed public policy, but we do not see how it is pertinent to determining whether or not Shelter's policy is ambiguous. In light of our determination that the policy is ambiguous, we must construe it against Shelter as the drafter. *Krombach,* 827 S.W.2d at 210. Thus, we need not examine public policy issues surrounding underinsured motorists coverage.

In its final point, Shelter argues that, if we find that the circuit court did not err in finding that Shelter's policy was ambiguous, we should find that the Hunts were entitled to $75,000 rather than $100,000. Having already determined that the offset provision was ambiguous and, thus, properly construed against Shelter, we need not address this argument. The $340,000 settlement was properly deducted from the Hunts' total damages.

The circuit court drew appropriate conclusions from the stipulated facts. We, therefore, affirm the circuit court's judgment.

VICTOR HOWARD and RONALD R. HOLLIGER, Judges, concur.