# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2754

_____

Missouri Public Entity Risk     *
Management Fund,     *
    *
        Appellee,     *     Appeal from the United States
    *     District Court for the
      v.     *     Western District of Missouri.
    *
Investors Insurance Company of     *     [PUBLISHED]
America,     *
    *
        Appellant.     *

_____

Submitted: January 13, 2006
Filed: June 28, 2006

_____

Before SMITH and HANSEN, Circuit Judges, and BOGUE,[1] District Judge.

_____

HANSEN, Circuit Judge.

This diversity-based declaratory judgment case involves a dispute over the interpretation of an excess insurance policy issued by Investors Insurance Company of America ("Investors") to the Missouri Public Entity Risk Management Fund ("MOPERM"). There is no dispute that Missouri law governs the interpretation and

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

application of the insurance contract at issue. The district court[2] granted summary judgment to MOPERM, concluding that excess insurance coverage exists under the policy, and Investors appeals.

MOPERM is a statutorily-created corporate body that provides liability insurance coverage for Missouri public officials, cities, counties, and various other public entities. MOPERM purchased an excess insurance policy from Investors to cover claims exceeding $900,000 for a single incident or exceeding $6,000,000 for the annual aggregate of all claims. The policy states that Investors "will pay those sums that the Insured becomes legally obligated to pay as damages because of 'wrongful acts' to which this coverage applies." (Appellant's App. at 48.) The policy defines an "Insured" as "Member Agencies of MOPERM and any elected or appointed official of the Member Agency . . . while acting within the course and scope of duties." (Id. at 51.) As relevant here, the excess policy provides coverage for wrongful acts of a county or an official acting within the scope of the official's duties. The policy defines a "wrongful act" as including "any alleged or actual act, error or omission, or breach of duty, or violation of any federal, state or local civil rights, by a[n] Insured while acting within the scope of his/her duties as a public official." (Id. at 53.) The policy was later modified to add Endorsement No. 19, which expressly provides "coverage for discrimination prohibited by law." (Id. at 85.)

MOPERM filed this declaratory judgment action, seeking a determination of liability under the excess insurance policy with regard to four unrelated employment discrimination claims that it had either settled or lost at trial but for which Investors had denied coverage under the excess insurance policy. MOPERM alleged it was entitled to indemnification for the claims under Endorsement 19 of the policy because the claims all involved "discrimination prohibited by law." While the district court

---

[2]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

found coverage for all four claims, only one of these claims is at issue in this appeal–that of Darlene Hellerich against Jerome Biggs and Andrew County, Missouri ("the Hellerich claim").

The allegations of the Hellerich claim are these: Darlene Hellerich worked for Jerome Biggs, a lawyer who had a private practice and served as the Andrew County prosecuting attorney. Hellerich worked as an assistant in the private law firm and was also a county employee, serving as clerk for the prosecutor's office. In the office and during work time, Biggs engaged in outrageously offensive and discriminatory conduct toward Hellerich. Also, Hellerich alleged that a custodian for the county, Gary Reed, engaged in inappropriate touching of Hellerich's breasts on more than one occasion and joined in Biggs's harassing and discriminatory banter as well. Hellerich finally felt forced to resign due to their conduct toward her.

Hellerich filed suit against Biggs in state court, alleging intentional and negligent infliction of emotional distress on the basis of Biggs's conduct in the workplace. She also filed charges of discrimination with the Missouri Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") against Andrew County (her employer) and Biggs (her immediate supervisor), alleging sexual harassment and a hostile environment at work due to the conduct of Biggs and Reed. In the EEOC charge, Hellerich further asserted that during her employment with the county, there was no established procedure for registering discrimination complaints, nor was there an existing antisexual harassment policy in effect governing county employees.

MOPERM settled the Hellerich claim in its entirety. In exchange for the settlement proceeds, Hellerich dismissed the pending state court lawsuit against Biggs, withdrew the EEOC charges of discrimination against Biggs and the county, and relinquished her right to sue on the administrative charges. Andrew County agreed to maintain thereafter an antiharassment policy and to provide appropriate training on

harassment issues to all county employees. The Hellerich settlement did not exceed the single claim floor of MOPERM's policy with Investors, but it caused MOPERM's annual aggregate claims to exceed $6,000,000, triggering coverage on the excess insurance policy. Thus, MOPERM sought indemnification from Investors. Investors disputed the claim on several grounds. The district court granted summary judgment to MOPERM, concluding that excess coverage existed for this claim under the language of the policy and Missouri law.

We review *de novo* both the district court's grant of summary judgment, see Baum v. Helget Gas Prods., Inc., 440 F.3d 1019, 1021 (8th Cir. 2006), and the district court's interpretation of state law, Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991); Myers v. Richland County, 429 F.3d 740, 749 (8th Cir. 2005). Under Missouri law, "[a]n insured must bring itself within the terms of the policy and must carry the burden of offering substantial evidence that the underlying claim is covered by the policy." Trans World Airlines, Inc. v. Associated Aviation Underwriters, 58 S.W.3d 609, 618-19 (Mo. Ct. App. 2001) (internal marks omitted). "The courts are to enforce insurance contracts as written unless an ambiguity requires the court to impose various rules of interpretation." Hunt v. Everett, 181 S.W.3d 248, 250 (Mo. Ct. App. 2006). "[W]e construe ambiguous provisions in an insurance policy against the insurer." Id. The court, however, "will not distort unambiguous policy language to create an ambiguity." Haulers Ins. Co. v. Wyatt, 170 S.W.3d 541, 546 (Mo. Ct. App. 2005). We give effect to the intent of the parties as expressed in the contract "unless to do so would violate public policy." E. Attucks Cmty. Housing, Inc v. Old Republic Sur. Co., 114 S.W.3d 311, 319 (Mo. Ct. App. 2003). Additionally, if "an insured risk and an excluded risk constitute concurrent proximate causes [for a loss], a liability insurer is liable so long as one of the causes is covered by the policy." Centermark Props., Inc. v. Home Indem. Co., 897 S.W.2d 98, 101 (Mo. Ct. App. 1995) (internal marks omitted).

On appeal, Investors first argues that there is no coverage for the Hellerich claim because it did not involve "wrongful acts" by an "insured" within the meaning of the policy. Investors points to policy language that an "insured" is an official acting within the scope of his duties as a public official and that "wrongful acts" are only acts by an insured who is acting within the scope of those official duties. Investors asserts that the alleged wrongful acts of intentional sexual harassment were not within the scope of Biggs's official duties as county attorney, and thus they cannot serve as the basis of the claim for excess insurance coverage. That argument misses the point. The county is itself an insured as a member agency of MOPERM. (See Appellant's App. at 51.) For the reasons that follow, the county's own failure to act deprives it of its defense to vicarious liability under federal law for the hostile environment Biggs allegedly created. That liability then serves as an independent basis for coverage under the language of the excess insurance policy that covers discrimination prohibited by law.

"The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment[]" for purposes of determining an employer's agency liability for the acts of its employees. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 757 (1998). However, conduct that is within the "[s]cope of employment does not define the only basis for employer liability under agency principles," id. at 758, and as noted, the insurance policy at issue covers not only "wrongful acts" within the scope of an official's duties but also "discrimination prohibited by law." (Appellant's App. at 85.) An employer may be vicariously liable for intentional acts of discrimination committed by an employee where "the employee was aided in accomplishing the tort by the existence of the agency relation." Id. at 759 (internal marks omitted). For the agency relation to have aided in accomplishing the tort, there must be "something more than the employment relation itself." Id. at 760. Thus, the Court established the following rule:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages . . . [which is comprised of] two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Id. at 765; Faragher v. Boca Raton, 524 U.S. 775, 807 (1998).

The state court petition and the EEOC charges assert that all of Biggs's offending conduct occurred in the workplace, during work hours, while he was functioning in his official capacity as county prosecutor and as Hellerich's supervisor. Not only did Biggs allegedly harass and demean Hellerich himself, he allegedly condoned, encouraged, and joined in Reed's harassment of Hellerich as well. Hellerich's administrative charge against the county asserts that the county had no antiharassment policy and no established complaint procedure in place to offer protection to a county employee placed in this type of situation by a supervisor, and none is independently shown by the other evidence in the record before us. The settlement proceeds were paid in exchange for Hellerich's agreement to dismiss both the state lawsuit against Biggs personally and the EEOC charges against the county, which grew out of Biggs's misbehavior.

Because the insurance policy covers not only wrongful acts within the scope of an official's duties but also discrimination prohibited by law, the fact that Biggs's alleged conduct was not within the scope of his duties does not preclude coverage for the county. The county's own failure to protect employees by not providing a preventive antiharassment policy, adequate training, or a complaint procedure renders it unable to defend against its vicarious liability for Biggs's prohibited discriminatory

supervisory misconduct in the workplace.  Investors even admits in its brief that this policy language could be construed to provide coverage "where the basis for the insured's liability is because of purely vicarious liability." (Appellant's Br. at 28 n.60.) The district court correctly concluded that the excess coverage applied in light of the administrative charges against the county.  See Centermark Props., Inc., 897 S.W.2d at 101 (holding that coverage exists under a liability policy as long as at least one insured risk is a cause of the loss).

Investors also argues that it is against Missouri public policy to allow a person to insure against his or her own intentional unlawful conduct.  See E. Attucks Cmty. Housing, Inc., 114 S.W.3d at 319 (stating that the court "agree[s] with the trial court that in Missouri, it is against public policy to allow one to insure against one's own thefts, dishonest acts or intentionally inflicted damage").  However, Investors points to no clear public policy in Missouri that prevents a public entity from insuring itself against intentional acts of employment discrimination by supervising employees or the county's own purely vicarious liability.  In fact, Missouri has held in an analogous context that it is not "against public policy to permit an association of law enforcement officers to insure themselves against alleged willful and intentional acts." Colson v. Lloyd's of London, 435 S.W.2d 42, 47 (Mo. Ct. App. 1968).  Also, in considering an insurance policy that expressly covered an insured's intentional acts, our court has anticipated that the Missouri Supreme Court would not prohibit insurance coverage for civil rights violations on the basis of public policy.  New Madrid County Reorganized Sch. Dist. No. 1 v. Cont'l Cas. Co., 904 F.2d 1236, 1242-43 (8th Cir. 1990) (involving a § 1983 claim by teachers against a school district regarding the teachers' First Amendment rights).  We see no reason to differentiate that holding, or the holding of Colson, from the public employee employment discrimination context at issue in this case.  The excess insurance policy at issue does not violate Missouri public policy.

Accordingly, the judgment of the district court is affirmed.

_____