**ALLSTATE INSURANCE COMPANY,**
Appellant,

v.

**Fadlalla IBRAHIM and Donald Henke, Jr., Respondents.**

No. ED 89483.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 11, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 14, 2008.

Application for Transfer Denied
Feb. 19, 2008.

Michael E. McCausland, Kansas City, MO, for appellant.

Steven P. Andreyuk, Bridgeton, MO, Howard A. Shalowitz, St. Louis, MO, for respondent.

ROBERT G. DOWD, JR., Judge.

Allstate Insurance Company ("Allstate") appeals the trial court's grant of Donald Henke's ("Henke") motion for summary judgment. Allstate argues the trial court erred in finding the language in the insurance policy relating to "non-owned auto" was ambiguous, which resulted in an improper finding that the auto was insured and Allstate had to provide coverage for Fadlalla Ibrahim ("Ibrahim"). Allstate also contends the trial court erred in its consideration of the "non-owned auto" policy language because it used the interpretation most favorable to a non-party to the contract without considering the intentions of the parties to the contract. Further, Allstate argues the trial court erred in failing to determine the vehicle operated by Ibrahim was available or furnished for the regular use of Ibrahim and had the trial court found the taxi cab was available or furnished for the regular use of Ibrahim, Allstate maintains it would have excluded the taxi cab from the definition of "non-owned auto" and from the definition of "insured auto" thus providing no coverage for Ibrahim. Lastly, Allstate argues the trial court erred by failing to give effect to the plain meaning of the "available for hire" exclusion because Allstate's evidence conclusively established that the trial court should have found that the "available for hire" exclusion applied resulting in no coverage for Ibrahim. We reverse and remand.

On April 13, 2001, Henke sustained personal injuries in a motor vehicle accident involving a motorcycle driven by Henke and a 1991 Chevrolet Caprice ("the Caprice") driven by Ibrahim. Ibrahim did not own the Caprice. Ibrahim leased the Caprice from its owner, Azmat Ali ("Ali"), and drove it as a taxi cab through an employment arrangement with St. Louis Auto Livery, Inc., which does business as Allen Cab. The Caprice was available to Ibrahim to use at any time, and Ibrahim used the Caprice on a daily basis, sometimes for personal errands. During the lease period, which is when the accident

occurred, there were no restrictions regarding how often or for what purpose Ibrahim used the Caprice. The Caprice was kept at Ibrahim's home, and Ibrahim was the only person who drove it.

Immediately before the accident, Ibrahim was coming from his home, did not receive a dispatch, was not responding to a call, and was driving for his own private errands. Ibrahim's destination was the St. Louis Auto Auction to look at cars and not to pick up passengers, and between the time he left his home and the collision, Ibrahim did not make any stops.

With respect to its use as a taxi-cab, the Caprice was insured under an insurance policy issued by National Security Fire & Casualty Company ("National Security") to St. Louis Auto Livery, Inc.[1]

Allstate issued an insurance policy with bodily injury limits of $50,000 for injury to one person to Ibrahim and his wife for a 1987 Toyota Camry, and the policy was in full force and effect on April 13, 2001. The Allstate insurance policy defines an "insured auto" as "any auto or utility auto you own which is described on the Policy Declarations" and it also includes "a replacement auto," "an additional auto," "a substitute auto," "a non-owned auto" or "a trailer while attached to an insured auto . . . ." The definition of a "non-owned auto" is the central issue in this case. The insurance policy defines "non-owned auto" as "an auto used by you . . . with the owner's permission but which is not: a. owned by you or a resident relative, or b. available or furnished for the regular use of you or a resident relative." Moreover, the policy stated if an insured person is using a "non-owned auto," Allstate's liability insurance will be excess over other collectible insurance.

Henke executed an agreement pursuant to Section 537.065, RSMo 2000,[2] in which in consideration of a $176,000 payment he released St. Louis Auto Livery, Inc., Haggard, and Ibrahim from claims arising from the collision. This agreement eliminated any personal exposure of Ibrahim, but allowed Henke to pursue a claim to the limit of Ibrahim's insurance coverage under his policy with Allstate.

Henke filed an action for damages against Ibrahim, and a judgment was entered in favor of Henke and against Ibrahim for $50,000. The judgment also provided that the judgment could be collected "only, if at all, from Allstate."

Thereafter, Allstate filed a petition for declaratory judgment seeking a declaration that Ibrahim has no coverage under the Allstate policy to pay the judgment entered against him and in favor of Henke.

Henke filed an answer to Allstate's petition for declaratory judgment, and he also filed a counterclaim for a declaratory judgment against Allstate and a cross-claim for a declaratory judgment against Ibrahim. Henke sought a declaration that Ibrahim had coverage under Allstate's policy to pay the judgment entered against Ibrahim in the amount of $50,000.

Henke also filed a motion for summary judgment. Allstate filed a reply to Henke's counterclaim for declaratory judgment, and Allstate also filed a motion for summary judgment.

---

1. After the accident, Henke entered into an agreement through which in exchange for $25,000 paid by or on behalf of National Security, Ibrahim, Harrison Haggard (the owner and president of St. Louis Auto Livery, Inc.) and St. Louis Auto Livery, Inc., Henke agreed to release National Security from any further claims arising from the accident.

2. All further references are to RSMo 2000 unless otherwise indicated.

The trial court subsequently entered its judgment. In its judgment, the trial court determined Ibrahim's insurance policy with Allstate provided coverage for the damage to Henke in the amount of $50,000 because Ibrahim was not using the Caprice for hire at the time of the accident, but was instead using it for personal use. Thus, the trial court concluded Ibrahim was outside of the course and scope of his employment for St. Louis Auto Livery, Inc.[3] As a result, the trial court found Ibrahim was covered for Henke's damages under the Allstate insurance policy.

In addition to that finding, the trial court found the Caprice was a "non-owned auto," relying on the fact that Ibrahim never held a legal title to the vehicle nor was there a conditional sale of the Caprice to Ibrahim. The trial court also determined the language in the policy used the word "or" between paragraphs "a" and "b" in the definition of "non-owned auto," and therefore it was disjunctive rather than conjunctive. The trial court found this policy language created an ambiguity, and, as a result, it construed the policy against Allstate and found the mere fact that Ibrahim did not own the Caprice was sufficient to qualify the Caprice as a "non-owned auto" under the terms of the policy without even considering paragraph "b." The trial court found in addition that there was no genuine dispute as to the material fact that Ibrahim was covered by the Allstate insurance policy and Henke had a right to summary judgment as a matter of law. The trial court granted Henke's motion for summary judgment and his cross-claim and counter-claim for declaratory judgment and found Henke was entitled to

immediate execution from Allstate for $50,000. This appeal followed.

Our review of the grant of a motion for summary judgment is essentially *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of initially sustaining the motion. *Id.* The propriety of summary judgment is purely an issue of law. *Id.* As the trial court's judgment is founded on the record submitted and the law, we need not defer to the trial court's order granting summary judgment. *Id.*

When considering appeals from summary judgments, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp.*, 854 S.W.2d at 376. We accept facts set forth by affidavit or otherwise in support of a party's motion as true unless they are contradicted by the non-moving party's response to the summary judgment motion. *Id.* The non-movant is given the benefit of all reasonable inferences from the record. *Id.*

To be entitled to summary judgment, the moving party must establish that it is entitled to judgment as a matter of law and that there is no genuine dispute as to the material facts. *Id.* at 380.

In its first point, Allstate argues the trial court erred in granting Henke's motion for summary judgment and in denying Allstate's motion because it found the language in the insurance contract relating to the definition of "non-owned auto" was am-

---

**3.** Allstate refutes this conclusion and argues Ibrahim was available to pick up fares when the accident occurred. This dispute does not constitute an issue of material fact in this case because the question of whether Ibrahim was acting within the course and scope of his employment is irrelevant to the determinative issue of whether the Caprice qualifies as a "non-owned auto" under the policy with Allstate.

biguous even though the language is not reasonably open to different constructions, which is apparent by viewing the exclusion that was properly before the trial court. Allstate argues further that without the finding of ambiguity, the policy would have been given its plain and ordinary meaning and the trial court would have found the taxi cab was not a "non-owned auto" and therefore was not an "insured auto." Thus, the trial court would have held Ibrahim was not an "insured person," and Allstate was not responsible for providing liability coverage.

■ We are to enforce insurance contracts as written unless an ambiguity requires us to impose various rules of interpretation. *Hunt v. Everett,* 181 S.W.3d 248, 250 (Mo.App. W.D.2006). An ambiguity exists when contract language is duplicitous, indistinct, or uncertain, leaving its interpretation open to differing reasonable constructions. *Id.* Where an insurance contract's language is ambiguous, we apply the meaning that would ordinarily be understood by the insured and, because the insurer typically is the party responsible for the ambiguity as the contract's drafter, we construe ambiguous provisions in an insurance policy against the insurer. *Id.* Insurance contracts are to be given their plain meaning, and if a policy is unambiguous, it is to be enforced according to its terms. *Christian v. Progressive Cas. Ins., Co.,* 57 S.W.3d 400, 403 (Mo.App. S.D. 2001). Moreover, proper interpretation of insurance policies requires that we seek to harmonize all provisions of the policy and to avoid leaving some provisions without function or sense. *Kyte v. American Family Mut. Ins. Co.,* 92 S.W.3d 295, 299 (Mo.App. W.D.2002).

■ In this case, the relevant policy provisions stated that an "insured auto" is "any auto or utility auto you own which is described on the Policy Declarations. This

also includes ... d. A non-owned auto...." Further, the policy provided that a

> 'non-owned auto' means an auto used by you or a resident relative with the owner's permission but which is not:
>
> a. owned by you or a resident relative, or
>
> b. available or furnished for the regular use of you or a resident relative.

Allstate argues that the policy language is not ambiguous. Allstate points to two cases involving similar language where courts have held the policy was not ambiguous. In *Schuster v. Shelter Mut. Ins. Co.,* 857 S.W.2d 381, 384 (Mo.App. S.D. 1993) the policy defined "non-owned auto" as "any auto other than (a) the described auto, or (b) an auto owned in whole or in part by, or furnished or available for regular use of, either you or any resident of your household." The court found this language was plain and unambiguous and must be enforced as written. *Id.* Similarly, in *Grinnell Mut. Reinsurance Co. v. Scott,* 628 S.W.2d 355, 357 (Mo.App. W.D. 1981) "non-owned automobile" was defined as "an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative...." This language was also found to be neither ambiguous nor deceptive. *Id.* In *Grinnell* and *Schuster,* the non-owned auto provisions were found to exclude the respective insurance companies from coverage.

Henke contends Ibrahim was driving an auto that was used by him with the owner's permission and was not owned by him or a resident relative. Henke asserts that this set of facts satisfies the definition of "non-owned auto" under exclusion "a" and one need not even consider exclusion "b." Henke argues further that the question of whether the word "or" is conjunctive or disjunctive in this instance does not really

matter because Ibrahim is covered under paragraph "a" by itself and paragraphs "a" and "b" taken together. However, Henke provides meager support for the argument that there is coverage under paragraphs "a" and "b" taken together; he merely states that this is so because Ibrahim is not excluded from both "a" and "b." Henke also maintains the *Grinnell* and *Schuster* cases that Allstate relies on are inapposite because the insurance policies in those cases are factually different. Henke maintains that Allstate could have accomplished the result it seeks by using a "neither . . . nor" construction, but it did not, and thus, as a contract of adhesion the insurance policy must be construed against Allstate.

We find that the trial court erred in determining that the policy language defining a "non-owned auto" was ambiguous. The policy language is substantially similar to the language in *Grinnell* and *Schuster*, both of which were found to be unambiguous. Further, there is no conflict between the definition of a "non-owned auto" and the meaning an average lay person would ascribe to such language.[4] The definition of a "non-owned auto" specifically excludes any auto owned by Ibrahim or a resident relative or available or furnished for the regular use of Ibrahim or a resident relative. This language is plain and unambiguous and must be enforced as written.

As noted above, proper interpretation of insurance policies requires that we seek to harmonize all provisions of the policy and to avoid leaving some provisions without function or sense. *Kyte*, 92 S.W.3d at 299. If we were to adopt the interpretation of the "non-owned auto" clause posited by Henke, paragraph "b" would be left without function or sense. Allstate drafted the policy to require proof of both circum-

stances. If the language is interpreted according to Henke's argument, any vehicle not owned by the insured would qualify, without question, as an insured auto, regardless of how it was used. Such an interpretation is untenable.

■ We note that the rationale behind "non-owned auto" clauses is to protect an insurer from a situation where an insured could purchase one policy for a described vehicle and be covered by the same policy without qualification while operating any and all other automobiles under his control or available for his use. *Kern v. Liberty Mut. Ins. Co.*, 398 F.2d 958, 961 (8th Cir. 1968). Ibrahim testified that he failed to pay additional premiums to Allstate for the increased risk presented by his operation of the Caprice.

Therefore, the trial court erred in granting Henke's motion for summary judgment and in denying Allstate's motion because it found the language in the insurance contract relating to the definition of "non-owned auto" was ambiguous. The policy should have been given its plain and ordinary meaning.

Next we must determine whether Allstate is responsible for providing coverage when the policy language is properly given its plain and ordinary meaning. To reach a conclusion on this issue, we must evaluate whether the Caprice comes within the policy definition of a "non-owned auto." Thus, we will address Allstate's third point which deals with this issue.

■ In its third point, Allstate argues the trial court erred in granting Henke's motion for summary judgment and in denying Allstate's motion because the trial court failed to apply factors from *State*

---

**4.** *See American Family Mut. Ins. Co. v. Tickle,* 99 S.W.3d 25, 30–31 (Mo.App. E.D.2003), describing how the word "or" functions as a coordinating conjunction that is ordinarily used to connect grammatically equal elements.

Farm Mut. Auto. Ins. Co. v. Western Casualty and Surety Co., 477 S.W.2d 421 (Mo. banc 1972) and failed to determine the vehicle operated by Ibrahim was available or furnished for the regular use of Ibrahim because the evidence clearly established the availability and regular use concerning the Caprice. Allstate argues further that had the trial court found the Caprice was available or furnished for the regular use of Ibrahim, it would have excluded the Caprice from the definition of "non-owned auto" and from the definition of "insured auto," thus providing no coverage for Ibrahim and resulting in a grant of Allstate's motion for summary judgment and a denial of Henke's.

Allstate focuses on paragraph "b" in the definition of "non-owned auto," which it argues is sufficient to defeat Henke's claim that the Caprice was a "non-owned auto." Allstate relies primarily on State Farm Mut. Auto Ins. Co. in which the Supreme Court held that in determining whether an non-owned automobile has been furnished or available for frequent or regular use, "each case should be decided on its own facts, and the court should take into consideration the type and length of use, the purpose for which the non-owned automobile was furnished, and any other pertinent facts, including a determination of whether the use and purpose was in harmony with or violative of the objective of the 'non-owned automobile' clause." State Farm Mut. Auto. Ins. Co., 477 S.W.2d at 424. Subsequent cases applying these criteria have focused on whether the facts are consistent with the purpose of a "non-owned automobile" clause, which is to eliminate an increase in risk without a concordant increase in premium. Spicer by Spicer v. Jackson by Berra, 853 S.W.2d 402, 404 (Mo.App. W.D.1993).

Allstate asserts that the policy language at issue in State Farm Mut. Auto Ins. Co. was nearly identical to the language at issue in this case. Allstate also notes that the Caprice was available for Ibrahim's frequent and regular use. Allstate contends further that Ibrahim had only insured one car, a Toyota Camry, under his policy with Allstate.

In response Henke argues, Ibrahim is covered under paragraph "a" in the definition of "non-owned auto" and there is no need to consider Allstate's arguments with respect to paragraph "b." Nevertheless, Henke also contends paragraph "b" is ambiguous and must be construed to afford Ibrahim coverage. Henke further maintains that the insurance premium Ibrahim paid to Allstate covered the driver of both the Toyota and the Caprice, though no evidence is offered to support this claim.

We have already decided in Allstate's first point that if Ibrahim owns the Caprice or the Caprice is available or furnished for his regular use, the Caprice will not be covered by the Allstate policy because it will not qualify as a "non-owned auto."

Henke's argument that the policy language in paragraph "b" is ambiguous is without merit. The language is clear and must be given its plain meaning.

While the trial court found Allstate had failed to meet its burden to show the Caprice was available for Ibrahim's regular use, we find the uncontroverted facts demonstrate that the Caprice was available for Ibrahim's regular use. Ibrahim was leasing the Caprice from his friend, Ali. During the lease period, Ibrahim used the Caprice on a daily basis, sometimes for personal errands. The Caprice was kept at Ibrahim's home, and according to Ibrahim's own testimony, there were no restrictions regarding how often or for what purpose Ibrahim used the Caprice during the lease period. Lastly, Ibrahim was the only person who drove the Caprice during

Ibrahim's lease period. We find the Caprice was available for Ibrahim's regular use during the lease period, which is when the accident occurred. Therefore, the Caprice does not qualify as a "non-owned auto," and Allstate is not liable for covering damages resulting from the accident between Henke and Ibrahim.

Having found the trial court erred in finding the Allstate policy provided coverage for the Caprice, we need not consider Allstate's second or fourth points.

We reverse and remand to the trial court for entry of summary judgment in favor of Allstate.

KATHIANNE KNAUP CRANE, P.J. and KENNETH M. ROMINES, J., concur.