Bellesea **LASCHOBER** and Zsekainah Laschober, Through their Next Friend Brian Laschober and Isabella Buchanan Through her Next Friend Kerry Buchanan, Plaintiffs/Appellants,

v.

The **CITY OF KINLOCH**, Defendant/Respondent.

No. ED 94945.

Missouri Court of Appeals, Eastern District, Division Five.

Nov. 16, 2010.

Rehearing Denied Dec. 28, 2010.

Gonzalo Andres Fernandes, Devereaux, Stokes, Nolan, Fernandez & Leonard, P.C., St. Louis, MO, for Appellant.

James Robert Howard, St. Louis, MO, for Respondent.

## OPINION

MARY K. HOFF, Judge.

Bellesea and Zsekainah Laschober, et al. (Plaintiffs) appeal from the grant of summary judgment in favor of the City of Kinloch (Kinloch) on Plaintiffs' wrongful death action involving Elizabeth Buchanan (Decedent). On appeal, Plaintiffs argue the trial court erred in granting Kinloch's motion for summary judgment because there was a genuine dispute as to whether Kinloch had in place a policy of insurance that protected it from liability resulting in a waiver of sovereign immunity. We reverse and remand.

### Factual and Procedural Background

This case arises out of a grant of summary judgment entered in favor of Kinloch. Plaintiffs are the surviving minor children of Decedent. On the evening of July 12, 2009, two Charlack police officers responded to Decedent's residence after receiving complaints of a domestic disturbance. After interviewing both Decedent and her husband, the two police officers made the determination that Decedent should be taken into protective custody for her own protection. Decedent was taken to the Charlack police department where she was processed and then transferred to the Kinloch jail. In the early morning hours of July 13, 2009, Decedent was found dead, apparently by suicide, in her cell at the Kinloch jail.

On September 9, 2009, Plaintiffs filed their original wrongful death petition alleging various acts of negligence against both Kinloch and the City of Charlack. Plaintiffs later filed their Third Amended Petition and named as defendants various individuals including the two Charlack police officers and the Kinloch law enforcement officer charged with supervising the jail the night Decedent was in custody. In their Third Amended Petition, Plaintiffs alleged various acts of negligence against Kinloch related to how their law enforcement officers handled the care and custody of Decedent when she was taken into protective custody. They also alleged that Kinloch was negligent in failing to implement appropriate guidelines with respect to the handling of inmates who present a suicide risk and failed to properly educate and train staff.

On November 24, 2009, Kinloch filed its motion for summary judgment and memorandum in support thereof and supporting documentation.[1] Plaintiffs subsequently filed their Response to Kinloch's Motion for Summary Judgment, and Kinloch filed its Reply to Plaintiffs' Response. The City of Charlack filed a motion for summary judgment also claiming sovereign immunity. On January 28, 2010, the parties argued and submitted the motions for summary judgment. On April 19, 2010, the trial court issued its order granting summary judgment in favor of both Kinloch and the City of Charlack. Plaintiffs now appeal the trial court's grant of summary judgment as it relates to Kinloch only.

1. By consent judgment, the parties agreed to allow this motion for summary judgment to apply to Plaintiffs' Third Amended Petition subsequently filed on March 11, 2010.

## Standard of Review

Appellate review of summary judgment is de novo. *Southers v. City of Farmington*, 263 S.W.3d 603, 608 (Mo. banc 2008); *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Southers*, 263 S.W.3d at 608. A "genuine issue" that will prevent summary judgment exists where the record shows two plausible, but contradictory, accounts of the essential facts and the "genuine issue" is real, not merely argumentative, imaginary, or frivolous. *Id.* We review the record in the light most favorable to the party against whom judgment was entered. *Id.* The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment. *Id.*

■ Where the parties do not dispute the underlying facts, disputes arising from the interpretation and application of insurance contracts are matters of law for the court. *Crossman v. Yacubovich*, 290 S.W.3d 775, 778 (Mo.App. E.D.2009). When interpreting an insurance policy, we must determine whether the language is ambiguous, which is a question of law. *Id.* An ambiguity exists when the contract language is duplicitous, indistinct, or uncertain, leaving its interpretation open to differing reasonable constructions. *Allstate Ins. Co. v. Ibrahim*, 243 S.W.3d 452, 456 (Mo.App. E.D.2007). Proper interpretation of insurance policies requires that we seek to harmonize all provisions of the policy and to avoid leaving some provisions without function or sense. *Id.*

## Discussion

■ In their sole point on appeal, Plaintiffs argue the trial court erred in granting summary judgment in favor of Kinloch because there was a genuine issue of material fact as to whether Kinloch had in place a policy of insurance that protected it from liability resulting in a waiver of sovereign immunity. Specifically, Plaintiffs contend that there is coverage under the "Law Enforcement Coverage Form" for Plaintiffs' claims, and, therefore, Kinloch has waived its sovereign immunity under Section 537.610.[2] Plaintiffs assert that, at a minimum, there exists an ambiguity as to the application of the jail exclusion within the policy of insurance. We agree.

The common law rule of sovereign immunity has long been recognized by Missouri courts. *Southers*, 263 S.W.3d at 609. Sovereign immunity is statutorily modified by Section 537.600, which carves out two general exceptions involving automobile accidents and dangerous conditions of property. Section 537.600.1(1)–(2). Section 537.610 establishes a third exception to the general principle of sovereign immunity in instances where the public entity has purchased liability insurance. Section 537.610.

Here, in their Third Amended Petition, Plaintiffs alleged the existence of a policy of insurance that provides to Kinloch liability coverage for the acts alleged in their petition. Kinloch does not dispute that it purchased an insurance policy issued by the Scottsdale Indemnity Company (Scottsdale), which was in effect on the dates of the alleged negligent acts as contained in Plaintiffs' Third Amended Petition. Kinloch admits that the existence of insurance coverage for Plaintiffs' claims

---

**2.** Unless otherwise indicated, all further statutory references are to RSMo 2000. Citations to Section 537.600 are to RSMo Cum.Supp. 2007, unless otherwise indicated.

would waive sovereign immunity under the provisions of Section 537.610.

A review of the Scottsdale insurance policy reveals that it is a single insurance policy issued in favor of Kinloch under policy number PEI0005298 with a policy period running from March 13, 2009, through March 13, 2010. The policy is generally entitled "Public Entity Policy" but contains four separate "coverage forms" that apply to various types of claims. There is a section entitled "Employment Practices Liability Coverage Form Claims Made Coverage," "General Liability Coverage Form Occurrence Coverage," "Law Enforcement Liability Coverage Form Occurrence Coverage," and "Public Officials Liability Coverage Form Claims Made Coverage." Each of these "Coverage Forms" has its own definition section as well as exclusions. In addition, the policy has a separate declarations page for each coverage form, which sets out the limits of liability and deductibles under each coverage form.

Plaintiffs contend that their claims would be covered by the "Law Enforcement Liability Coverage Form," which applies to claims made against Kinloch related to improper or negligent acts of their law enforcement officers. This coverage form states in Section I:

> We will pay on behalf of the insured all "loss" resulting from "law enforcement wrongful act(s)" which arise out of and are committed during the course and scope of "law enforcement activities" or which arise out of the ownership, maintenance or use of premises by you for the purpose of conducting "law enforcement activities."

The definition section of the "Law Enforcement Liability Coverage Form," found in Section VI, provides two important definitions:

4. "Law enforcement activities" means:

a. Those activities conducted by your Law Enforcement Department or Agency shown in the Law Enforcement Liability Coverage Part Supplemental Declarations; and

b. Departmentally approved activities which are declared in the application for this insurance.

5. "Law enforcement wrongful act" means any actual or alleged act, error or omission, neglect or breach of duty by the insured while conducting "law enforcement activities" which results in:

a. "personal injury";

b. "bodily injury";

c. "property damage".

The definition of "Law enforcement activities" makes reference to those acts shown in the "Law Enforcement Liability Coverage Part Supplemental Declarations." However, nowhere in the section are the specific activities listed.

Plaintiffs have alleged various acts of negligence against Kinloch related to how their law enforcement officers handled the care and custody of Decedent when she was taken into protective custody on July 12, 2009. Plaintiffs have also alleged negligence as to how Kinloch trains and supervises its law enforcement officers. On appeal, Plaintiffs argue that these acts of negligence are acts clearly within the scope of "law enforcement activities" as defined in the insurance policy. Furthermore, they argue, any ambiguity created by the definition of "law enforcement activities" in the insurance contract must be resolved in favor of Plaintiffs and the term must be given the broadest interpretation possible.

Our review of the insurance policy indicates that it contains a section entitled "Public Entity Policy—Common Policy

Conditions" and "Public Entity Policy— Common Liability Exclusions and Common Liability Definitions." The "Common Liability Exclusions" section states that it applies to the four "coverage forms" that make up the Scottsdale policy. Under Section A, entitled "Common Liability Exclusions," the policy states: "The following exclusions apply to the liability coverages designated in the Common Policy Declarations. Refer to the individual coverage forms for additional exclusions." This section then goes on to set out seven exclusions that apply to all four of the coverage forms, including exclusions for pollution, war, asbestos, nuclear energy, dams, eminent domain, and worker's compensation.

Despite the absence of the jail exclusion in the "Common Liability Exclusions" section, however, Kinloch asserts that it has not waived sovereign immunity under Section 537.610 because there is an exclusion under the "General Liability Coverage Form" for injuries arising out of the "operation, maintenance or use of any jail." Interestingly, the jail exclusion is not found in the "Law Enforcement Liability Coverage Form" or, as mentioned above, in the "Common Liability Exclusions" section found at the beginning at the "Public Entity Policy." Plaintiffs insist that if the intent of the insurer had been to have the jail exclusion apply to all areas of coverage, then it would have been included in the section entitled "Common Liability Exclusions."

To further bolster their argument that the jail exception applies only to general liability coverage and not to all sections of the insurance policy, Plaintiffs point to the following inconsistency: Section II, Paragraph 23 of the "General Liability Coverage Form" sets out an exclusion for any bodily injury, personal injury or property damage arising out of any act or omission of the Kinloch Police Department; howev-er, reading this exclusion to apply beyond the general liability portion of the policy would be in direct conflict with the broad coverage provided by the "Law Enforcement Coverage Form" and would render the entire liability policy issued under the "Law Enforcement Coverage Form" illusory.

■ Finally, Plaintiffs argue that, even if there is no coverage for Plaintiffs' claims under the insurance policy, at a minimum, there exists an ambiguity as to the application of the jail exclusion to any coverage form other than the general liability coverage form in which it is found. If the language of an insurance contract is ambiguous or inconsistent, we will construe the ambiguous provisions against the insurer. *Allstate Ins. Co.*, 243 S.W.3d at 456.

Plaintiffs argue that, on the one hand, there is explicit language in the policy that provides for coverage to Kinloch under the "Law Enforcement Coverage Form" but, at the same time, there is a denial of coverage based on the exclusionary language set out in the "General Liability Coverage Form." Plaintiffs argue that had it been the intent of the insurer to apply this exclusionary language to all liability coverage forms, it would have been included in the section entitled "Common Liability Exclusions," and not merely the "General Liability Coverage Form" in which it is found. Moreover, Plaintiffs insist that there is no similar exclusionary language in the "Law Enforcement Liability" portion of the insurance policy because none was intended. We find Plaintiffs' argument persuasive.

Given the record before us, an ambiguity exists as to whether the jail exclusion was intended to be restricted to a particular section of the policy of insurance or applied uniformly. As such, there is a genuine issue of material fact as to the applica-

bility of Kinloch's insurance policy to the present facts and claims made by Plaintiffs. The trial court erred in granting summary judgment in favor of Kinloch. Point granted.

### Conclusion

We reverse the decision of the trial court and remand this matter for further proceedings consistent with this opinion.

GARY M. GAERTNER, Presiding Judge and PATRICIA L. COHEN, Judge, concur.